CALDWELL (AMELIA v.). See Case No. 278.

CALDWELL (BREWER v.). See Cases Nos. 1,848 and 1,849.

CALDWELL (FIRST NAT. BANK v.). See Case No. 4,798.

---

## Case No. 2,301.

### CALDWELL v. HARDING et al.

[5 Blatchf. 501.] [1]

Circuit Court, S. D. New York. Oct. 15, 1867.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

---

## Case No. 2,302.

### CALDWELL v. HARDING et al.

[1 Lowell, 326.] [1]

Circuit Court, D. Massachusetts. May Term, 1869.

EFFECT OF WAR ON AGENCY—LIMITATION OF ACTION.

1. The master and managing owner of a ship which was partly owned in the rebellious states insured the interests of the southern owners, and, the vessel having been lost, collected the insurance money; he likewise collected earnings of the vessel; all this while the war was going on. Held, that after the peace he was bound to pay the southern owners their share of the moneys so collected.

2. If the contract of insurance was illegal, the implied contract by the agent to pay over the moneys collected on the policies was not so after peace.

3. The defendant was an administrator appointed in Massachusetts, and the plaintiff had brought an action against him for the same cause in the circuit court of the United States for the southern district of New York, which was dismissed [Case No. 2,301] for want of jurisdiction: Held, that the action was abated or defeated in consequence of a defect in the form of proceeding, within section 5, c. 97, Gen. St. Mass., and so the new action might be brought within one year after the old one was determined.

[Cited in Hardin v. Cass Co., 42 Fed. 654; McCormick v. Eliot, 43 Fed. 473.]

At law. Assumpsit [by William A. Caldwell against David J. Harding and others, administrators] for moneys received by the defendant's intestate to the use of the plaintiff. Most of the facts were agreed; but when the cause came on to be heard by the court, it was found that the agreement left certain matters to be decided by the court upon the written evidence, and lest the parties might be embarrassed in taking a writ of error if they should desire it, they filed a stipulation, by suggestion of the court, waiving a jury trial, in accordance with the act of March 3, 1865, § 4 (13 Stat. 501). Under this stipulation this cause was heard, and the court decided that the facts shown by the written agreement of the parties and by the amendment thereto and by the exhibits therein referred to and annexed, were to be taken as facts in the cause, and that the policy of insurance for three thousand dollars on the vessel therein mentioned was made for the benefit of the three southern owners, of whom the plaintiff was one; and that the policy for five thousand dollars on freight was for the benefit of all the owners.

The facts of the case were, that the plain-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

tiff was an inhabitant of Charleston, S. C., and so continued during the war, and was owner of one-sixteenth of the bark Lamplighter. Two other owners, who together owned three-sixteenths, and whose cases, by stipulation, depended on the decision of this, lived in the insurrectionary states. The remaining owners, who were many, lived in Massachusetts. In October, 1861, the bark was seized on behalf of the United States, and was proceeded against by a libel of information in the district court for the southern district of New York, as forfeited under the act of congress of July 13, 1861, §§ 5, 6, and under the president's proclamation, issued in pursuance of said act (see 12 Stat. 257). John Payne, the master of the ship, and who was one of the owners, intervened for his own interest and that of all the other owners but one, and filed a stipulation for value, with sureties, and the vessel was released, and made voyages and earned freight which was paid to Payne. In October, 1862, the bark was lying at New York, bound on a foreign voyage, and, at the request of Payne, a firm of brokers procured a policy of insurance for three thousand dollars on the vessel and one for five thousand dollars on the freight, both of which were made to the brokers for whom it might concern, the former of which the court found to have been in fact made for the benefit of the three southern owners only, and the latter for all the owners. The vessel soon after proceeded to sea, and was destroyed by the Alabama. In December, 1862, the northern owners petitioned the secretary of the treasury for a remission of the forfeiture of the vessel, and their petition was granted; the libel was discontinued, and the stipulation cancelled. Afterwards, the brokers collected the insurance money, less the premiums, and paid it to Payne, who accounted to the northern owners for their respective shares of the insurance on the freight, and for their proportions of the earnings of the vessel. He did not account to the plaintiff, and died in 1865. He was domiciled in Massachusetts, and the defendants were duly qualified here as his administrators in September, 1865, and gave due notice of their appointment. This suit was brought in January, 1868, to recover the plaintiff's share of the freight and insurance moneys above referred to. An action for the same cause was brought by him against these defendants in the circuit court of the United States for the southern district of New York in July, 1866, and was decided for the defendants in October, 1867, upon the sole ground that the court had no jurisdiction of actions against administrators appointed in and under the laws of Massachusetts. [See Case No. 2,301.]

E. D. McCarthy, of New York, for plaintiffs.

C. F. Blake, of New York, for defendant.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

LOWELL, District Judge. The first defence taken in this case is the statute of limitations of Massachusetts, which requires actions against administrators to be brought within two years after they have given bond (Gen. St. c. 97, § 5). The seventh section of the same statute provides that, if an action is brought in due season, and is abated or defeated in consequence of any defect, &c., or of a mistake in the form of proceeding, the plaintiff may commence a new action for the same cause within one year after the determination of the original suit. In deciding whether the former action between these parties was defeated in consequence of a mistake in the form of proceeding, we may well look at the decisions upon the corresponding section of the general statute of limitations, which is very similar in its terms, and has been longer upon the statute-book (Gen. St. c. 155, § 11), and we shall find that the supreme court of Massachusetts have given to this exception a liberal interpretation in favor of meritorious creditors. The tendency of their decisions is to bring all mistakes which have defeated actions, independently of their merits, within the saving of the statute. Thus, a mistake in the residence of the defendant is held to be an unavoidable accident within that clause (Bullock v. Dean, 12 Metc. (Mass.) 15); a mistake of the clerk in not entering a writ, by reason of which the action was dismissed, was a matter of form (Allen v. Sawtelle, 7 Gray, 165); and where an action was dismissed for want of jurisdiction, because brought in a county where neither of the trustees lived, it was held to be defeated for a matter of form (Woods v. Houghton, 1 Gray, 580). It was argued to us that the court in the case last cited had jurisdiction of the subject-matter and of the parties, and so a mistake of venue was a merely formal mistake. But it was a mistake which went to the jurisdiction of the court, in that county, and the fact that it was the same court, and not some other, that had jurisdiction in the proper county, was not of the essence of the decision. If the miscarriage here had been in the circuit court in Maine instead of New York, the cases would be exactly analogous, but the decision ought to be the same. It was said, indeed, that this was a more considerable mistake; but that is immaterial; the statute intends to guard suitors against mistakes which are not of substance, whether large or small. The mistake in the first case of Woods v. Houghton was one of law, and was patent on the writ, or it could not have been dismissed on motion. Indeed, the argument for the defendant in the second case was that a mistake of jurisdiction, patent on the writ, was not a mistake of form. We do not regard the difference in language between the two statutes to be

important in the present case. In one it is "any matter of form," and in the other, "in the form of proceeding." The latter is more like the phrase used in the old statute of 1793, c. 75, § 2; but granting that a mistake of this character is a mistake in some matter of form, it seems to be in the form of proceeding. No argument was founded on the difference; nor do we perceive that there could well be one.

The defence upon the merits rests upon the effect attributed to the state of war which existed between the United States and the states in rebellion, during the time that most of the freight money was earned, and when the insurance contracts were made and the losses settled. It is argued that an express promise by Payne to pay the freight money to the plaintiff would have been illegal, and so an implied promise could not arise, for the law will not imply an illegal promise. This would have been a good defence to an action brought during the war. The law prohibits ordinary commercial intercourse between enemies on grounds of public policy, and if Payne had expressly promised to pay, during the war, or had accepted a bill of exchange drawn at that time for the purpose of transferring the funds during war, the contract would have been illegal and could not be enforced even after the return of peace: Willison v. Patteson, 7 Taunt. 439. But war does not confiscate debts or property for the benefit of debtors or agents, but only suspends the right of action. It is no longer illegal for the defendants to pay the plaintiff, and the law will imply a promise to pay money when it ceases to be illegal to do so.

In respect to the insurance moneys it is said that the contract to insure the vessel of the plaintiff, or his freight, was illegal, and that the insurance companies could not have been obliged to pay the loss, and having paid it to Payne he cannot be obliged to account to the plaintiff. Assuming the illegality of the original contract, it by no means follows that the plaintiff cannot recover. If I employ an agent to rob or cheat my neighbor, I cannot oblige him to account to me for the spoil, because in order to do this, I must display the defect of my own title. But if I send a second agent to receive the money of the first, and he does receive it, my title as against him depends on his having received it in my name from a person who voluntarily paid it. So here Payne having collected the loss in behalf of the plaintiff cannot say that the insurance companies need not have paid it. The argument for the defence relies very much upon the fact that Payne procured the original insurance, that is, ordered the brokers to have it made; but this is immaterial; when made it was a contract between the plaintiff and the companies, and when Payne collected the loss of the brokers, he was not concerned with the original contract. I do not mean to say that the brokers would have been in any different position. Making the contract and receiving the payment were distinct and independent acts of agency, which have no legal connection with each other. If indeed the insurers had been deceived and had paid the money in ignorance of facts which invalidated the policy, and had discovered the mistake before the brokers paid over to Payne, an action might probably have been maintained against the brokers to recover back the sums so ignorantly paid. If the payment had already been made to Payne, it is more doubtful whether the action would have lain against him, because he never contracted with the companies. But waiving this point, the case before us does not show any ignorance or mistake in this behalf, and if it did the statute of limitations would protect these defendants; though the plaintiff might still be liable to the companies.

The parties have agreed that there should be but one bill of costs in the three suits, and that in the event of a decision for the plaintiff this action should be sent to a commissioner of this court to state an account. Order accordingly.