HARDIN v. CASS COUNTY.

*(Circuit Court, W. D. Missouri, W. D.* June 9, 1890.)

1. LIMITATION OF ACTIONS—RUNNING OF STATUTE—NONSUIT.

Where plaintiff, in an action in the federal court on county bonds, declares on fictitious bonds in addition to those held by him, merely for the purpose of giving the court jurisdiction of the amount, and takes a voluntary nonsuit, the institution of such suit, and bringing of another suit within one year, as provided by Rev. St. Mo. § 6784, does not arrest the running of the statute of limitations. The equitable construction given the statute allowing a new action after suffering a nonsuit cannot be invoked by one who knowingly practices a fraud on the jurisdiction of the court.

2. JURISDICTION—JUDGMENT FOR PART OF DEMAND.

After a successful plea of the statute of limitations to a part of plaintiff's claim, judgment may be rendered for the balance, though it is less than the amount necessary to give the court jurisdiction, and though the petition on its face shows that the part of the claim against which the statute was pleaded was barred at the commencement of the action; since plaintiff in bringing the suit was not bound to anticipate that defendant would plead the statute.

At Law. Action on bonds.

*Karnes, Holmes & Krauthoff*, for plaintiff.

*W. S. Shirk* and *J. F. Lynn*, for defendant.

PHILIPS, J. This is an action founded on certain bonds and coupons issued by the defendant county. The petition contains three counts. The first counts on eight bonds, of $500 each, issued August 26, 1869, due six years after date. The second counts on three bonds and twenty-three coupons, two bonds for $500 each, and one for $250, dated July 11, 1870, due nine years after date, with interest at 10 per cent. after maturity. The answer interposes the plea of the statute of limitations. It is conceded that the statute has run against the bonds set out in the first count, and the cause of action, therefore, is barred as to them. The statute of limitations is also interposed as to the cause of action set up in the second count of the petition. It appears that the statute of limitations has run as to coupons from 6 to 20, inclusive, attached to bonds 1, 2, and 13, described in the count, and the cause of action as to said coupons is therefore barred.

The more important question arises on the third count. At the time this action was begun the two bonds numbered 25 and 26 were *prima facie* barred by the statute of limitations. To avoid this plea, the plaintiff alleges that on the 5th day of July, 1889, 13 days before the statute of limitations had completed the bar, he instituted suit in this court on said bonds 25 and 26, and on the 12th day of September, 1889, he took a voluntary nonsuit therein, and instituted the present suit January 29, 1890, within the year allowed by the state statute after such nonsuit. To this defendant makes answer that in such action begun by plaintiff on the 5th day of July, 1889, he alleges "that he was the owner and holder for value of bonds number 23 and 24, and of the bonds herein described as Nos. 25 and 26, and that said bonds remained due and unpaid, amounting in the aggregate to the sum of $2,000, and prayed judg-

ment thereon; that at the time of the bringing of said suit the said plaintiff was not the owner of said bonds Nos. 23 and 24, nor did the said bonds 23 and 24 remain unpaid, but, to the contrary, no such bonds were ever issued by the defendant, and that bonds of that number had been issued by the defendant dated August 26, 1869, and due August 26, 1878; that judgment had then long since been rendered upon the first, in case No. 1,082, and the second in case number 942; and that the said judgment had long since been fully paid, and satisfaction of the same entered upon record, and said second bonds fully canceled. Defendant avers that said second bonds Nos. 23 and 24 were only mentioned and declared upon in plaintiff's petition for the purpose of enabling the plaintiff to perpetrate a fraud upon the jurisdiction of this court, by apparently giving the court jurisdiction as to the amount of said action; that this defendant at the September term, A. D. 1889, of this court, filed in said cause an answer stating the aforesaid facts, and that thereupon the plaintiff dismissed its said suit. The defendant avers that the bringing of said action, and the dismissal thereof as aforesaid, was not the commencement of an action, and the suffering of a nonsuit therein, within the meaning of the statute of the state of Missouri in such case made and provided." The court finds the facts thus charged by defendant are substantially true. The aggregate amount of the four bonds sued on in the first action was just $2,000; and, in order to increase "the amount in dispute" to over $2,000, $100 of interest coupons attached to said bonds 25 and 26 were counted on. Waiving here any discussion of the question whether, under the act of March 3, 1887, said interest coupons could have availed to make the debt "exclusive of interest" over $2,000, it is indisputable that, without the two bonds 23 and 24, the sum sued for was not over $1,100.

The question, therefore, to be answered is, was such action taken by plaintiff in the first attempt such institution of a suit as was contemplated by the law-maker as sufficient to stop the running of the statute of limitations? Section 6784, Rev. St. Mo., provides that, "if any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, * * * such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed." A voluntary nonsuit, such as the voluntary dismissal of the action, is held by the supreme court of the state to be within the terms of this statute. It is also to be conceded to the plaintiff that authorities entitled to the greatest respect hold that a suit begun within the statutory period of limitation, in a court not having jurisdiction of the subject-matter, may be within the saving clause of the one-year provision. The leading case, perhaps, is that of *Coffin* v. *Cottle*, 16 Pick. 383. The plaintiff brought his action within the time limited by law against the administrator to recover a debt due from the intestate, obtained judgment, and took out an execution, which was returned *nulla bona*, and plaintiff then sued out a writ of *sci. fa.*, suggesting waste, and before judgment the defendant's letters of administration were adjudicated to be void, on the ground that

the probate judge, having an interest in the estate, was technically without jurisdiction to issue them.   The plea to the *sci. fa.*, alleging the invalidity of the judgment by reason of the nullity of the first letters of administration, was sustained by the court.   Within one year thereafter the action was renewed, and it was held by the court that the first action was the institution of a suit, in contemplation of the statute.   This case was followed in *Caldwell* v. *Harding*, 1 Low. 326.   There the defendant was administrator appointed by the court in Massachusetts.   The plaintiff brought his action against the administrator in the circuit court of the United States in New York, which was dismissed for want of jurisdiction.   Afterwards, and within the year, he renewed the action against the administrator in the United States circuit court for the district of Massachusetts.   LOWELL, J., applied the doctrine in *Coffin* v. *Cottle* to the facts of this case, and held that the action was not barred.   This was predicated of the provision of the Massachusetts statute of limitations, which provided, *inter alia*, that if an action is brought in due season, and is abated or defeated in consequence of any defect in form, etc., or of a mistake in the form of proceeding, the plaintiff may commence a new action for the same cause within one year after the determination of the original suit.   In *Weathersly* v. *Weathersly*, 31 Miss. 662, the plaintiff filed his bill in chancery, which was afterwards dismissed by the court for want of prosecution.   Afterwards, on motion, the cause was reinstated on the docket, and in the further progress a final decree was rendered in favor of the complainant.   Upon appeal to the supreme court, the decree of the lower court was reversed, on the ground that the trial court had no jurisdiction of the cause at the time the decree was rendered, "inasmuch as the suit had been dismissed by the chancery court, and after the expiration of the time at which the dismissal took place all jurisdiction over the suit had ceased."   Within two months after the judgment and reversal the suit was renewed.   It was held that the first suit stopped the running of the statute of limitation.   The court say:

"It is true that the decree rendered in behalf of the complainant was declared void because the jurisdiction of the chancery court over the cause had ceased before the decree was made; yet the decree, though void in law, was operative and effectual in form, in so much that the defendant found it necessary to resort to this court in order to have it declared a nullity.   It was a valid decree in law until reversed by this court, and, being a decree of a court of competent jurisdiction, it could not have been properly set at naught until it was reversed.   Its validity depended on a doubtful question of jurisdiction."

The case most relied on by defendant is that of *Railway Co.* v. *Manees*, 49 Ark. 248, 4 S. W. Rep. 778.   The plaintiff instituted the first action before a justice of the peace to recover damages for the sum of $125, in which he prevailed.   On appeal to the supreme court the judgment was vacated, on the ground that the justice had not jurisdiction in such cases over a sum exceeding $100.   Within a year thereafter the action was reinstituted, and it was held to be within the saving provision of the statute.   No impartial eye can read any of the decisions in question without

discovering that the existence of good faith on the part of the actor in the first action instituted is the basis of the "equitable construction" given the statute. Chief Justice SHAW in *Coffin* v. *Cottle, supra,* after stating that the statute is remedial, and should have such construction as would best carry into effect the intent of the legislature, and that after a fixed time the presumption arising from the creditors remaining a certain length of time silent would be that the debt was discharged, observed: "But this presumption does not arise if the creditor resorts to *legal* diligence to recover his debt within the time limited." So LOWELL, J., in *Caldwell* v. *Harding,* observes: "The statute intends to guard suitors against mistakes which are not of substance, whether large or small." And again, in the *Manees Case,* 49 Ark. 248, 4 S. W. Rep. 780, the same thought was in the mind of the court. The chief justice observed:

"It cannot be said to be the policy of the state to encourage the citizen to take upon himself the task or the hazard of determining the validity of the proceedings of the courts. * * * It is not to be presumed that the framers of this remedial law, the only object of which was to relieve meritorious creditors, intended to invite the debtor who had gone through all the forms of a trial of his cause in a judicial tribunal, and seen the result recorded in the form and with the apparent effect of a binding judgment or decree, afterwards to take the law in his own hands, and wholly disregard the court's proceedings."

The statute in question, as all the courts say, should be equitably construed, as its purpose is to protect honest suitors. As it is designed to accomplish the ends of justice, *ex æquo et bono,* it is to be presumed that, whenever and wherever it should be made to appear to the court administering the statute that there was no mistake of fact, no misapprehension of law, in the mind of the actor in first selecting his remedy or the forum, but that he took the course he did knowingly to evade the law and obtain an unauthorized judgment, the court would say to such a suitor: You are not within the equity of the statute. It was designed to promote justice, and not to aid fraud on jurisdiction. In *Smith* v. *McNeal,* 109 U. S. 426, 3 Sup. Ct. Rep. 319, the first action failed simply by reason of the omission in the pleadings of the allegation of a jurisdictional fact, which fact, however, actually existed. The plaintiff was allowed to reinstitute his action within the year, as provided by the Tennessee statute. Mr. Justice WOODS made the following suggestive observation:

"Defendants in error, however, contend that the bringing of a suit in a court having no jurisdiction thereof was gross negligence, and that the current of authority is against extending the terms of the statute to let in one guilty of it. Cases might be supposed, perhaps, where the want of jurisdiction in the court was so clear that the bringing of the suit therein would show such gross negligence and indifference as to cut the party off from the benefit of the saving statute, as if an action of ejectment should be brought in a court of admiralty or a bill in equity should be filed before a justice of the peace. But the suit between these parties, which was begun December 31, 1873, is far from being such a case. There is nothing in the record to show that it was dismissed for any inherent want of jurisdiction in the court in which it was brought."

In the case at bar there was not only an "inherent want of jurisdiction in the court in which it [the suit] was brought," but the plaintiff knew it, and sought to evade the admission of the legal fact on the face of his petition by declaring on two other bonds he did not have, and which were not in existence.   He was not guilty of "gross negligence," it is true; but, if in the opinion of the supreme court the benefit of the statute should be denied to a suitor guilty of inexcusable negligence, how much more so should it be denied him when it is manifest that he counted on a fictitious demand in order to give his cause a colorable standing in court, merely to get a demand below the jurisdiction of the court into judgment, as he preferred a judgment on his genuine claim from the federal rather than a state court.   The whole legislation of congress respecting the jurisdiction of the United States courts, especially since 1875, indicates that its policy was and is to restrict the number and character of suits in this jurisdiction.   This is made quite manifest by section 5 of the judiciary act of 1875, which provides—

"That if in any suit commenced in a circuit court, or removed from a state court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court * * * for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit, or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

By the latter clause of this section, such action of the circuit court was made reviewable by the supreme court; but, as further evidencing the mind and policy of congress in this direction, by the act of March 3, 1887, this right of appeal is taken away.   And the action of the supreme court on this statute indicates a determined and settled policy on its part to carry out to the very letter this legislative policy.   So that no matter at what stage of the proceedings, whether the parties raise or suggest such question or not, the moment the court observes, from the record and actual facts, that the matter in litigation is not within the jurisdiction of the court, it will summarily dismiss the proceeding. *Hawley* v. *Fairbanks,* 108 U. S. 548, 2 Sup. Ct. Rep. 846; *Hawes* v. *Oakland,* 104 U. S. 459; *Grace* v. *Insurance Co.,* 109 U. S. 278, 3 Sup. Ct. Rep. 207; *Bernard* v. *Stebbins,* 109 U. S. 341, 3 Sup. Ct. Rep. 252; *Farmington* v. *Pillsbury,* 114 U. S. 138, 5 Sup. Ct. Rep. 807.   Mr. Justice MILLER in *Hawes* v. *Oakland, supra,* observed of this statute that it "strikes a blow, by its fifth section, at improper and collusive attempts to impose upon those courts the cognizance of cases not justly belonging to them. * * * It is believed that a rigid enforcement of this statute by the circuit courts would relieve them of many cases which have no proper place on the docket."

It certainly is in the legitimate line of carrying out the spirit of both statutes under consideration to leave where he has voluntarily placed himself the suitor who has sought to misuse and abuse the jurisdiction

of this court to obtain its aid in the collection of a claim not cognizable by it. With full knowledge of his rights, the plaintiff saw fit to let the statute of limitations run against his demand while he was juggling with the court and the defendant; and he ought not to expect the same court to invoke the spirit of "equitable construction" to release him from the trap he sprung on himself. This practice in bond litigations has, doubtless, been pursued by other suitors, until plaintiff regarded it but following precedent to adopt it. But it is a bad precedent, and one that can never ripen into a right by prescription. I feel constrained, therefore, to hold that the statute of limitation has also run against the cause of action stated in the third count of the petition.

Defendant insists that the "matter in dispute" involved in the second count, being the only real cause of action left to the plaintiff, is below the jurisdiction of the court, the plaintiff ought not to recover on this count, and the action should be dismissed. To this I cannot consent. In *Lee* v. *Watson*, 1 Wall. 337, the court say: "By matter in dispute is meant the subject of litigation, the matter for which the suit is brought, and upon which issue is joined, and in relation to which jurors are called and witnesses examined." *Prima facie*, the amount claimed in the petition is the amount in dispute, and this determines the jurisdiction in the first instance. Id. This governs the question of jurisdiction until it is made to appear that the real demand is less. *Hilton* v. *Dickinson*, 108 U. S. 166, 2 Sup. Ct. Rep. 424; *Gray* v. *Blanchard*, 97 U. S. 565. Although the petition may have shown on its face that the causes of action stated in the first and third counts were barred by the statute of limitations, yet, unless the defendant had seen fit to interpose the bar by appropriate plea, the plaintiff would have proceeded to judgment thereon. The plea of the statute is personal to the defendant. It might, as debtors often do, have waived the privilege. A creditor is not required to anticipate, in every case, such defense, and on the bare expectation of the plea refrain from suing. After a successful defense to one or more causes of action counted on in the petition, the jurisdiction of the court is not ousted to prevent it from proceeding to judgment for the amount found on trial to be due and owing to the plaintiff, forsooth it may be less than $2,000. *Upton* v. *McLaughlin*, 105 U. S. 640. It results that the issues are found for the defendant on the first and third counts of the petition, and for the plaintiff on the second count, except as to the coupons numbered from 6 to 20, inclusive, as hereinbefore stated. Judgment accordingly.