## HAWLEY *v.* FAIRBANKS and Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Decided May 7th, 1883.

*Appeal—Conflict of Law—Injunction—Jurisdiction—Mandamus—Municipal Bonds—Municipal Corporations—Statutes.*

An act of the State of Illinois authorizing subscriptions by municipalities to the stock of a railroad company required the town clerks to transmit to county clerks transcripts of votes authorizing subscriptions, and the amount voted and the rate of interest to be paid, and after issue of bonds, certificates of the amount of bonds issued, the rate of interest thereon, and the number of each bond. It also required the county clerk, after the execution and delivery of the bonds, to annually compute and assess upon the township enough to pay the accruing interest and cost of collection, and a fund for redemption. A subsequent statute authorized holders of such bonds to register them with the State auditor of public accounts, and made it the duty of the auditor to estimate the amount of assessment necessary to meet the interest, &c., and to inform the county clerk: *Held,*

That the object of each act was to provide a mode for information to reach the county clerk as to the amount of money necessary to be raised for these purposes, and that certified copies of judgments recovered in the Circuit Court of the United States by such bondholders upon their bonds lodged with the county clerk, had the same force and effect as information derived

in the modes provided by law, and made it the duty of the clerk to proceed with the computation and assessment of the tax.

Where a State court enjoined a municipal officer from enforcing a tax to pay a municipal obligation, and subsequently to the injunction a judgment for payment of the interest which it was agreed should be made by the assessment and collection of the tax was recovered in a circuit court of the United States, the injunction cannot stand in the way of the enforcement of the tax by the circuit court, to carry its judgment into execution.

When distinct causes of action are united in one suit for convenience, and to save expense, and the sum at issue in some of the causes is insufficient to give jurisdiction, and in others is sufficient to give it, those cases in which it is insufficient will be dismissed for want of jurisdiction, and those in which it is sufficient will be retained for adjudication.

Petition for mandamus to a county clerk, to compel the assessment of a tax to pay judgments recovered upon municipal bonds issued to pay subscriptions to stock in a railroad corporation.

*Mr. James K. Edsall* and *Mr. John B. Hawley* for plaintiff in error.

*Mr. George A. Sanders* for Fairbanks, defendant in error.

*Mr. T. C. Mather* for Skinner, Thomas and Wetmore, defendants in error.

*Mr. Thomas S. McClelland* for all defendants in error.

Mr. CHIEF JUSTICE WAITE delivered the opinion of the court.

On the 5th of April, 1872, the town of Amboy, Lee County, Illinois, issued a series of bonds in payment of a subscription voted by the voters of the town to the capital stock of the Chicago & Rock River Railroad Company. Both the subscription and bonds were authorized by the charter of the railroad company, approved March 24th, 1869.

Sections 12 and 13 of this charter, which alone need be considered, are as follows:

"§ 12. It shall be the duty of the clerk of any such city, town or township, in which a vote shall be given in favor of subscription, within ten days thereafter, to transmit to the county clerk of their counties a transcript or statement of the vote given, and the amount so voted to be subscribed, and the rate of interest to be paid : *Provided*, That when elections shall be held and bonds

issued, as aforesaid, it shall be the duty of the clerk of such town or township to file with the county clerk of their respective counties, within ten. days after the issuing of said bonds, certificates of the amount of bonds issued, and the rate of interest payable thereon, and number of each bond.

"§ 13. It shall be the duty of the county clerk of said county, annually, after the execution and delivering of such bonds aforesaid, to compute and assess upon all the taxable property returned by the assessor of such city, town, or township, a sum sufficient to pay the interest and costs of collection and disbursements upon all bonds so issued by the respective cities, towns or townships ; which tax shall be extended upon the collector's books as other taxes are, and, when collected, shall be paid to the treasurer of the county ; and such city, town or township shall, when providing for the levying and collecting of other taxes, also assess upon the property of such city, town or township, any rate not exceeding three per cent. in any one year upon the assessment, to provide a fund for the redemption of the principal and interest of such bonds as or when they become due—said taxes to be levied and collected as other taxes are ; but no tax shall be computed, assessed or collected, or any interest paid, to be applied upon said bonds, unless such bonds have been executed and delivered."

By an act of the general assembly of Illinois "to fund and provide for paying the railroad debts of counties, townships, cities and towns," passed and in force April 16th, 1869, the holders of that class of securities were authorized to register them in the office of the auditor of public accounts of the State. Sections 4 and 5 of that act are as follows:

"§ 4. When the bonds of any county, township, city or town shall be so registered, the State auditor shall annually ascertain the amount of interest for the current year due and accrued and to accrue upon such bonds, and from the amount so ascertained he shall deduct the amount in the State treasury placed to the credit of such county, township, city or town, as herein provided and directed ; and from the basis of the certificate of valuation of property heretofore provided to be transmitted to him, or, in case no such certificate shall be filed in his office, then upon the basis of the total assessment of such county, township, city or

town, for the year next preceding, he shall estimate and determine the rate per centum on the valuation of property within such county, township, city, or town, requisite to meet and satisfy the amount of interest unprovided for, together with the ordinary cost to the State of collection and disbursement of the same, to be estimated by the auditor and treasurer, and shall make and transmit to the county clerk of such county, or to the proper officer or authority whose duty it is or shall be to prepare the estimates and books for the collection of State taxes in such county, township, city or town, a certificate stating such estimated requisite per centum for such purpose, to be filed in his office, and the same per centum shall thereupon be deemed added to and a part of the per centum which is or may be levied or provided by law for purposes of State revenue, and shall be so treated by such clerk, officer or authority, in making such estimates and books for the collection of taxes ; and the said tax shall be collected with the State revenue, and all laws relating to the State revenue shall apply thereto, except as herein otherwise provided.

"§ 5. The State shall be deemed the custodian only of the several taxes so collected and credited to such county, township, city or town, and shall not be deemed in any manner liable on account of any such bonds ; but the tax and fund so collected shall be deemed pledged and appropriated to the payment of the interest and principal of the registered bonds herein provided for, until fully satisfied."

When the bonds of the town of Amboy were issued, the town clerk did not transmit to the county clerk the statement required by sec. 12 of the charter of the railroad company, but the president of the company caused them to be registered in the office of the auditor of public accounts in accordance with the provisions of the act of 1869. During the years 1872 and 1873 the auditor made the proper certificate under the registry law for the taxes to meet the interest for those years, and the taxes were extended by the county clerk in due form on the tax-collector's books, but before the collections were made certain tax-payers of the town obtained from the Circuit Court of Lee County an injunction against the county clerk, the county collector, and the town collector, restraining them from col-

lecting the taxes that had already been assessed, and also restraining the same parties and the auditor of public accounts of the State from taking any steps for the levy or collection of any other taxes to pay either the principal or the interest of the bonds.

After this injunction was obtained the relators, Fairbanks, Skinner, Thomas and Wetmore, being severally holders and owners of certain of the bonds and coupons of the town, began separate suits against the town in the Circuit Court of the United States for the Northern District of Illinois, to recover the amounts due them, respectively, on their coupons. These suits resulted in a judgment on the 13th of March, 1878, in favor of Fairbanks for $2,449 damages and $36.12 costs; another, on the 24th of January, 1878, in favor of Skinner, for $2,018.50 damages and $47.10 costs; another, on the 29th of November, 1875, in favor of Thomas, for $866 damages and $43.90 costs; and two others in favor of Wetmore, one on the 17th of December, 1875, for $3,836.14 damages and $50.40 costs, and the other, on the 20th of June, 1876, for $1,058.33 damages and $31.50 costs.

These several judgments remain unpaid, and have all been duly audited and allowed by the auditing board of the town, but the town clerk, whose duty it is to certify to the county clerk, on or before the second Tuesday in August in each year, the amount of taxes to be levied and collected to pay the charges against the town for the current year, refused to certify the judgments and kept himself concealed so as to avoid the process of the courts. The several plaintiffs then presented their respective judgments to the county clerk, and demanded that he "compute and assess upon all the taxable property in said town of Amboy a sum sufficient to pay said judgments, and each and every of them, and interest on the same to the date of payment, and costs of suit in each case, together with the costs of collecting and disbursing such taxes, and to extend such taxes upon the collector's books of said town of Amboy for the year 1879." This the county clerk refused to do, and thereupon the several judgment plaintiffs united as relators in an application to the Circuit Court of

the United States for a mandamus requiring him to comply with their demands.

To this application the county clerk answered, setting up defences, as follows :

1. That the town clerk had never transmitted to the county clerk the statement required by section 12 of the charter of the railroad company.

2. That the town clerk had never certified to the county clerk the allowance of the judgments by the board of auditors of the town.

3. That all taxes to pay principal and interest on the bonds covered by the several judgments of the relators, certified by the auditor of public accounts under the registry law, had been duly extended on the tax-collector's books, and their collection enjoined by the circuit court of the county ; and—

4. That he had himself been enjoined by the circuit court of the county from extending any taxes whatever on the tax-books to pay the principal or interest of the bonds held by the relators.

Upon demurrer to this answer, judgment was given in the court below awarding a writ of mandamus directed to the county clerk and commanding him to extend upon the tax-collector's books of the town, for the year 1879, a sum sufficient to pay each of the several judgments held by the relators, particularly describing the judgments separately. To reverse that judgment this writ of error was brought.

We are met at the outset with a motion of the defendants in error to dismiss the writ in this case on the ground that the several judgments proceeded upon below cannot be united to give us jurisdiction, and the amount due on any one of them does not exceed $5,000. The rule is settled, as stated more than once at the present term, that when distinct causes of action, in favor of distinct parties, are united in one suit, and distinct judgments are rendered for or against the several parties, their judgments cannot be joined to give us jurisdiction. *Ex parte Baltimore and Ohio Railroad Company*, 106 U. S. 5 ; *Farmers' Loan and Trust Company* v. *Waterman*, 106 U. S. 265 ; *Adams* v. *Crittenden*, 106 U. S. 576 ; *Schwed* v.

*Smith*, 106 U. S. 188. In the present case distinct causes of action, in favor of distinct parties, were united, for convenience and to save expense, in one suit, and distinct orders were made in favor of each one of the several judgment creditors. The proceeding was analogous to a creditors' bill brought by distinct creditors upon distinct judgments to reach the property of their common debtor. That was the case of *Schwed* v. *Smith*, *supra*, in which we held, following *Seaver* v. *Bigelows*, 5 Wall. 208, that the amount due the several creditors could not be joined to give jurisdiction on an appeal by the defendants. In the present case the amount due the relators Fairbanks, Skinner, and Thomas, respectively, does not exceed $5,000. As to them, consequently, the writ must be dismissed. But as to the relator Wetmore the case is different. She has two judgments, and the aggregate amount due her, including interest to the time the mandamus was awarded, exceeds $5,000. The matter in dispute with her, therefore, is sufficient for our jurisdiction, and the cause must be retained for adjudication in respect to her rights. This was the form of proceeding adopted in *Farmers' Loan and Trust Company* v. *Waterman*, *supra*.

Proceeding, then, to the consideration of the case on its merits, we will take up the defences relied on by the county clerk in the order in which they have been stated.

1. As to the omission of the town clerk to certify the statement required by the 12th section of the charter.

By the judgment of the circuit court, for the enforcement of which the mandamus is asked, the fact of the issue of the bonds and the liability of the town for the payment of the coupons held by the judgment creditor was judicially determined. Section 13 of the charter of the railroad company made it the duty of the county clerk annually, after the issue of the bonds, to compute and assess on the taxable property in the town a sum sufficient to meet the interest as it matured, and provide a sum for the redemption of the principal. The statement of the town clerk under section 12 was not a condition precedent to the computation and assessment of the tax by the county clerk. It was one way of informing the county

clerk of his duty; but not necessarily the only way. The law obliged him to make the assessment in due course of business after the bonds were put out, and until they were paid in full. When, therefore, the judgments of the Circuit Court of the United States were presented to him, he was officially informed that the liability of the town for the payment of the coupons sued for had been judicially established, and it became his duty, under section 13, to compute the tax necessary to pay them, and put it in the way of collection. No further certificate from any town officer was necessary. The issue of the bonds, under which the judgment creditor claimed the right to a tax, was conclusively proven, and that was enough. There is nothing in *Springfield and Illinois Southeastern Railway Company* v. *County Clerk of Wayne County*, 74 Ill. 27, to the contrary of this. In that case the vote was for a donation by the town to be paid by a tax, and there was no other evidence of the obligation to levy the tax than the vote of the electors. Under such circumstances there was reason for holding that the only legitimate evidence that could be produced to the county clerk of the fact of the vote was the certificate, which had been specially provided for in the act authorizing the donation to be made. Here, however, the bond carried on its face the declaration of the town that the holder was entitled to have the tax assessed and collected for its payment, and whatever was legitimate evidence of the issue of the bond was legitimate evidence of the duty of the clerk to act. The fact of the issue having been conclusively established by the judgment, the presentation of the exemplification of judgment to the county clerk was all that was in law necessary to make it his duty to proceed.

2. As to the certificate of the town clerk that the judgments had been audited and allowed by the town auditors.

What has already been said is equally applicable to this branch of the case. The judgment established the legal right of the judgment creditor to have the tax specially provided for by section 13 of the charter of the company computed and assessed by the county clerk without any further action of the town officers. After the issue of the bonds it became the positive duty of the county clerk to compute and assess, in the

regular course of business, to the extent that was necessary, the tax that had been contracted for to meet the liability thus incurred. It became, in legal effect, a part of the contract of the town that this should be done, and the judgment of the court establishing the contract was equivalent to a judicial determination that the tax must be levied by the county clerk, unless the judgment was otherwise provided for. Whenever, therefore, it was made to appear to the county clerk in any way that no other provision had been made, it was his duty under the law to proceed with the computation and assessment of the tax. The certificate of the town clerk, that the judgment had been allowed by the board of auditors for payment through the means of the annual taxation would have been one way, and, perhaps, the most appropriate way, of furnishing the information which the county clerk needed, but it has nowhere been made the only lawful way. When, therefore, the town clerk refused to make and forward such a certificate, there was no legal impediment to the employment of some other means to give the county clerk notice of what his duty required of him in the premises. The certificate of the town clerk was not in this case any more a condition precedent to the action of the county clerk than it was under the requirements of section 12.

3. As to the certificate of the auditor of public accounts.

This, like the certificate of the town clerk, is only one way of informing the county clerk of what his duty under section 13 requires. It is not, any more than the certificate of the town clerk, an indispensable prerequisite to the action of the county clerk.

4. As to the injunction.

The relator was not a party to the suit in which the injunction was obtained, and, consequently, is not bound by it. Having established her right to the tax by the judgment of the circuit court in a suit to which the town in its corporate capacity was a party, she may use the power of that court to command the assessment and collection of the tax as a means of carrying the judgment into execution, notwithstanding what the tax-payers may have caused to be done in some proceed-

ing to which the relator was not a party. The right to the computation and assessment, as well as the collection of the tax, followed as a matter of law from the establishment of the liability of the town for the payment of the interest which it was agreed should be made by the assessment and collection of the tax. An injunction against the officers before the judgment against the town was rendered cannot stand in the way of the enforcement of the tax by the circuit court to carry its judgment into execution.

The writ of error is dismissed as to the relators Fairbanks, Skinner, and Thomas, and the judgment of the circuit court awarding the mandamus in favor of Caroline C. Wetmore is affirmed.

*The cause is remanded with leave to modify the judgment in such a way as to adapt the command of the writ of mandamus to the circumstances consequent on the delay caused by the pendency of the writ of error in this court.*