## B. GALLAGHER v. M. S. KEMMERER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 13, 1891—Decided October 26, 1891.

[To be reported.]

1. Where an injury as a whole to lands, is the consequence of independent acts of trespass on the part of two or more persons, each act is a distinct cause of action for the portion of the injury resulting from it, and together they do not constitute a joint trespass.

(*a*) In trespass for injury to plaintiff's lands, it was shown that refuse and waste from defendants' coal-breaker, on their own lands, were carried down the stream, filled the bed thereof, overflowed, and accumulated upon plaintiff's bottom-land, rendering the same unproductive and worthless.

(*b*) It was made to appear that a portion of the accumulated refuse, fouling the stream and injuring the plaintiff's land, had come from the coal-breaker of another company operating independently, on their own lands, on the same stream, and above the coal-works of the defendants :

2. The liability of the defendants sued began with their own act on their wn land; and, being independent of the acts of the other operators, it was several when committed, and did not become joint because the general consequences were united : Little Schuylkill Co. v. Richards, 57 Pa. 142.

3. Wherefore, the defendants were liable separately for the results of their own act, though difficult of exact ascertainment; and they were not discharged by a prior quit-claim and release executed by the plaintiff to the upper operators, for all injury done by them in their operations.

4. A witness, called to testify as to damages to lands, being but thirteen years of age when the injuries complained of were committed, and then without definite knowledge of the lands, was incompetent to testify as to the extent to which the market value thereof was affected.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, and MITCHELL, JJ.

No. 43 July Term 1890, Sup. Ct.; court below, No. 151 December Term 1887, C. P.

On October 19, 1887, Bernard Gallagher brought trespass against M. S. Kemmerer and John Leisenring, Jr., doing business as M. S. Kemmerer & Co., to recover damages for injuries to the plaintiff's land, by washings cast upon it from anthracite-coal mines operated by the defendants upon their own land above. Issue.

At the trial, on March 21, 1890, it was made to appear, briefly, that the plaintiff was the owner of a tract of about 79 acres of land on Sandy Run creek in Foster township, and that when the suit was brought about twenty acres of it, along the stream, were covered and its productiveness destroyed by a deposit of coal washings coming from mines on the creek above; that from 1877 to the date of the suit brought the defendants operated a coal mine and breaker at a point on their own lands along the same stream about one mile and a half above the plaintiff's lands, and the washings from their breaker ran directly into the stream and were carried down by freshets, fouling the water, filling up the bed of the stream on the level lands below and spreading abroad therefrom; that from 1864, Markle & Co., under the Highland Coal Co., operated a mine and breaker, on their own lands, on the same stream, but about one mile above the breaker of the defendants; that. Markle & Co. dumped their culm, but a portion of the coal-washings ran into the stream and formed a portion of the deposit on the plaintiff's lands below when the suit was brought, and witnesses stated their opinions as to the proportion of the deposit attributable to the washings from the mines of Markle & Co. Upon the subject of damages sustained, the plaintiff among other witnesses called Michael Campbell, who testified that he was twenty-six years of age:

" Q. What was the condition of that stream before this coal

dirt was turned into it? A. I was quite young at the time, and I cannot exactly give an explanation on that point. Q. Before that coal dirt was turned upon the place, do you know what the market value of that property was?"

Defendants' counsel: "Q. Do you own any land in the neighborhood? A. No, sir. Q. Have you ever bought or sold any land in the neighborhood? A. No, sir. Q. Do you know of any sales of land having been made in the neighborhood? A. Yes, sir; I heard of the Griffiths and Harris sales. Q. When was the Griffiths sale? A. Some time in the fall, I think, or early part of the winter. Q. Last fall? A. Last fall. Q. And the other sale was when? A. About two years ago, probably more."

Defendants object to witness testifying as to value.

By the court: Objection overruled, evidence admitted; exception.[2]

"Q. What was the fair market value of Mr. Gallagher's property immediately before this coal dirt was put on it? A. That land along the creek was worth from $80 to $100 an acre. Q. What was the fair market value after it was covered with coal dirt? A. Worthless. Q. What effect had it, if any, upon the rest of the farm? A. Well, it had such an effect that no one would buy it, in my estimation. Q. Why? A. Because it was destroyed to such an extent that no one would want to have anything to do with it."

Other testimony of this witness is shown in the opinion of the court.

The defendants offered a certain quit-claim and release, executed by the plaintiff and his wife to Markle & Co., on August 8, 1884, " as evidence of a transaction in the nature of accord and satisfaction, and for any other purpose for which it may be evidence."

By the court: I am inclined to think it would be evidence for the purpose of showing that for the damage done by the Markles the plaintiff has been compensated, thus relieving the jury from any doubt as to that. I do not think it is a bar to the present action.

There was no objection to the offer for that purpose. The release, then read to the jury, provided that the plaintiff, in consideration of the sum of $400 paid, remised, released, quit-

claimed, and forever discharged " George B. Markle & Co., miners and shippers of coal from the lands of the Highland Coal Co., and its successors and assigns, of and from all claims and demands and suits for damages of and from all and any compensation for injury now or hereafter done to my property by the pollution of streams running through my lands from the lands of the Highland Coal Co., and by the deposit on my said lands of coal dirt, culm, waste or other materials from mines on the lands of the said Highland Coal Co., as to which company, however, no acknowledgment of responsibility for such injury or liability for any compensation therefor is to be inferred from the execution of this release. And I hereby consent for myself, my heirs, executors, administrators and assigns, in consideration of the premises, to such discharge of mine water in the stream aforesaid, and such deposit of coal-dirt, culm, and other mine products as aforesaid, as may be found necessary in the mining operations of said parties, their heirs, administrators, executors and assigns, respectively."

The case being closed on the testimony, the court, RICE, P. J., charged the jury in part as follows :

The plaintiff's claim is that he is entitled to recover damages for injuries caused by the defendants' depositing coal, etc., in the creek referred to in the evidence, or on the banks of it, in such a way that it was washed down upon his land. This claim may be subdivided, first, into a claim for damages for the fouling of the stream ; second, for damages to the land which was injured or destroyed by the overflowing of the stream and the deposit of culm upon it ; and third, for the depreciation in value of his whole farm.

Now, the defendants are liable to him for such injury as they caused. This is the law ; it is conceded by the defendants. They had no right, in law, to deposit this culm in the stream in such a way that it would be carried upon the plaintiff's land, and for such injuries as they caused by so doing they are liable. Now, if the whole injury which the plaintiff suffered was simply that done to the land which has been covered by the culm, then his measure of damages would be the difference in the value of that land by reason of the deposit. If the land is totally destroyed in value, then his damages would be the value

Charge of Court below.

of the land. If it is not totally destroyed in value, but is depreciated in value, then his damages would be the difference between the value of the land before the deposit, and the value of the land after the deposit, in October, 1887, at the time the suit was brought. That would be the damages which he would be entitled to recover from the parties who caused this deposit to be made; and the defendants would be liable for only such proportion of the damage as they caused. According to the testimony in the case, the Highland Coal Co., or G. B. Markle & Co., had two breakers on the same stream, above defendants' breaker. It is testified by Mr. Leisenring, I believe, that one of these had been in operation for eleven years, and the other, one year, before the defendants began; and it is alleged upon the part of the defendants and, indeed, it is not denied, that to some extent at least, the Highland Coal Co., or G. B. Markle & Co., deposited culm in such a way that it was carried down the stream; and it is apparent here from the testimony, that the injury which the plaintiff suffered was to some extent, at least, caused by the action of the Highland Coal Co., or G. B. Markle & Co. The defendants would be liable for only the damages caused by them.

Now, in deciding that question, you are authorized to take into consideration the nature of the stream, the location of these several breakers, the length of time they had been in operation, and the difference in the methods of preparing coal for the market. I shall not refer to these matters in detail, but you will take them into consideration in determining what was the proportion of injury caused by the defendants.

It is claimed on the part of the plaintiff that, in addition to the depreciation or total destruction of the value of the land covered by the culm, he has also suffered damages by reason of the fouling of the stream, so that it is now unfit for culinary purposes, and for drinking purposes, either by man or beast. If at the time the defendants commenced their operations, the stream was pure, or nearly so, and was rendered impure by their acts, then that would be a proper fact to take into consideration in estimating the damages. If, however, the value of the stream was destroyed for these purposes by the action of G. B. Markle & Co., before the defendants commenced their operations, then it would not be a proper fact for your consideration,

Charge of Court below.

for two reasons : First, if the value of the stream had been destroyed for such purposes, then it would have no value to lose ; and in the second place, G. B. Markle & Co., according to the testimony, have paid the plaintiff for such damages and injuries as they had caused him, and for such as they might cause him in the future, in the preparation of their coal.   It is claimed, in the third place, by the plaintiff, that he is entitled to recover damages, because, in addition to the destruction for farming purposes of the land which has been covered by culm, the rest of his farm has been depreciated in value.   The mere fact that this culm is unsightly, is not of itself a fact to be considered upon this branch of the case.   If, however, it affected the market value of the rest of the land, it would be a proper fact to be considered.   Therefore, if you find, as a matter of fact, that the farm as a whole was injured in its market value, then the difference in the fair market value before the deposits of culm, and its fair market value when this suit was brought, in 1887, would be the measure of damages ; bearing in mind, however, what has been said before, that the defendants are liable only for that proportion of the damages which they caused. . . . .

The defendants' counsel requests us to charge you:

1. That, as it appears from the evidence that the plaintiff settled with Markle & Co. for damages sustained by him for the fouling of Sandy Run and the deposit of culm on his land by them, and it being impossible under the evidence to separate and ascertain the proportion of damage caused by them and by the defendants, it having been occasioned by simultaneous and contemporaneous acts, the settlement must be regarded as an accord and satisfaction for the whole damage, and the plaintiff cannot recover in this action.

Answer : The point is answered in the negative.[1]

2. That the plaintiff is entitled to recover only such damage as the evidence shows he has suffered from the action of the defendants in placing coal culm in Sandy Run ; the defendants cannot be held liable for injury caused by the deposits in the stream, made from other collieries.

Answer : This is affirmed.

3. That the measure of damage is the decrease in the fair market value of the property as occasioned by the deposit of culm and mine-water in the stream and on the plaintiff's land, by the defendants and by no one else.

Answer : This is also affirmed.

—The jury returned a verdict in favor of the plaintiff for $1,000. Judgment having been entered, the defendants took this appeal, assigning for error :

1. The answer to the defendants' point.[1]
2. The admission of the plaintiff's offer.[2]

*Mr. G. L. Halsey* and *Mr. H. W. Palmer*, for the appellants :

1. The injury to which the plaintiff was subjected was of such a character that, as between individuals who may have caused it, it could not have been divisible, so as to ascertain and determine what part each may have caused. It was such that if there had been two persons who committed it, the results to the plaintiff would have been the same. Hence, when the plaintiff executed the release in evidence, it was a quit-claim and discharge of the whole injury that had been done to him. Moreover, Sandy Run creek was not a public highway at the points where the mine-waste entered it, but was the private property of the Highland Coal Co. and the defendants ; so that these operators, at their respective works, did no injury to any person and violated no legal right. They were carrying on the process of anthracite-coal mining as it is carried on in the locality where they operated, and in the approved way, upon their own private property. On their own land, therefore, they committed no wrong: Penna. Coal Co. v. Sanderson, 113 Pa. 146.

2. The injury that was done to the plaintiff was when the results and effects of the coal mining reached his land, and was then done " contemporaneously, concurrently and co-incidentally " by the Highland Coal Co., operated by Markle & Co., and these defendants, and was a joint trespass. Therefore, the quit-claim and release to the Highland Coal Co. was an accord and satisfaction of all the injury done to the plaintiff in law, as it was in fact: Seither v. Traction Co., 125 Pa. 402 ; Livingston v. Bishop, 1 Johns. 290 ; Fox v. Northern Liberties, 3 W. & S. 103 ; Addison on Torts, § 1353 ; Cooley on Torts, 136. Little Schuylkill Co. v. Richards, 57 Pa. 142, relied upon against the main proposition that this was a joint trespass, is plainly to be distinguished on its facts, and, moreover, was decided long before the broad ground was taken by this court in Penna.

Coal Co. v. Sanderson, 113 Pa. 146.    It is settled that where several persons commit a trespass, the person injured may sue each separately or all jointly ; but whatever course he takes, he can have but one compensation or satisfaction : Knox v. Work, 1 Bro. 103; Litt. Ten., § 376.

The court certainly erred in overruling our objection to the testimony of Michael Campbell : Negley v. Lindsay, 67 Pa. 217 ; Rouch v. Zehring, 59 Pa. 74; Watson v. Railroad Co., 37 Pa. 479.

*Mr. Edward A. Lynch* (with him *Mr. John Lynch*), for the appellee :

In general, where two or more persons act independently in producing an injury, they are not jointly liable for the combined result of their acts.    The leading doctrine governing the case at bar is clearly set forth in Gould on Waters, § 222, citing Little Schuylkill Co. v. Richards, 57 Pa. 142, where the exact questions raised in this case were decided against the defendants' contention, and again affirmed in Seely v. Alden, 61 Pa. 306; Leidig v. Bucher, 74 Pa. 67 ; Little Schuylkill Co. v. French, 81* Pa. 366 ; Gould v. McKenna, 86 Pa. 297 ; Huddleston v. West Bellevue Bor., 111 Pa. 110 ; New Boston Coal Co. v. Water Co., 54 Pa. 164; Schuylkill Co. v. McDonough, 33 Pa. 73; Fehr v. Navigation Co., 69 Pa. 161.    The liability commenced with the act of the defendants on their own premises, and this act was separate from and independent of the acts of others.    The defendants' act being several when it was committed, cannot be made joint because of the consequences which followed in connection with others who had done the same or a similar act.

OPINION, MR. JUSTICE CLARK :

This action of trespass on the case was brought by Bernard Gallagher, to recover damages for injuries to his land from a deposit of mine-water, culm, and dirt, accumulated thereon from the defendants' mining operations on Sandy Run creek, in Luzerne county.    The creek has its source in the mountains, about four or five miles above Gallagher's land through which it passes.    The defendants' operations were commenced in the year 1877.    The plaintiff alleges that in the process of washing

their coal, the refuse, culm, and dirt were conducted in chutes, which emptied the dirt into the creek, and by the waters of the creek were carried to and thrown upon his meadow land, covering twenty acres or more, and rendering the land barren and wholly unproductive. It appears, however, that the Highland Coal Co., operated by Markle & Co., had been mining coal several miles above on the same stream from 1864, and that that company has ever since been so engaged continuously to the bringing of this suit. The plaintiff alleges that the culm and dirt from both these mines could, at a moderate and reasonable expense, have been banked, and if this had been done no appreciable injury would have resulted; and, further, that the Highland Coal Co., to some extent at least, pursued this plan, but the defendant company dumped the refuse of their mines directly into the stream. In August, 1884, Bernard Gallagher, in consideration of the sum of four hundred dollars, by formal writing under seal released the Highland Coal Co. from all claims and demands for damages, and from compensation for injuries then or thereafter done to his property, either from the pollution of the stream, or from the deposit of refuse matter upon his lands by that company. It may be fairly inferred from this that the Highland Coal Co. did, in some degree, contribute to the injuries of which the plaintiff complains.

At the trial, the defendant presented a point for instruction to the jury, as follows:

" That, as it appears from the evidence that the plaintiff settled with Markle & Co. for damages sustained by him for the fouling of Sandy Run and the deposit of culm on his land by them, and it being impossible, under the evidence, to separate and ascertain the proportion of damage caused by them and by the defendants, it having been occasioned by simultaneous and contemporaneous acts, the settlement must be regarded as an accord and satisfaction for the whole damage, and the plaintiff cannot recover in this action."

This point was negatived, and that is the first error assigned.

It is argued, on the part of the appellants, that the injury to which the plaintiff was subjected was of such a character that it could not, as between the parties who caused it, be divided, so as to determine in what proportion it was caused by each;

and that, even if the defendants' mines had not been operated, the mining operations of the Highland Coal Co. would have resulted in the same injury. It is true that the injury complained of may have been caused in part by the operations of the Highland Coal Co., conducted contemporaneously with the operations of the defendants' mines, and that it would be difficult, if not quite impossible, to separate and ascertain, definitely or certainly, the proportion of the whole damage done by each of these operations, respectively. But these several operations were entirely independent of each other. They were several miles apart, and the ownership, management, and control were wholly distinct and separate. There was no concert of action, or common purpose or design, which would support the theory of joint injury. The case, in this branch, is ruled by Little Schuylkill Co. v. Richards, 57 Pa. 142. In that case, the mill-dam was filled by deposits of coal dirt from different mines. The court below charged the jury that if, at the time the defendants were throwing dirt into the river, the same thing was being done by other collieries, and the defendants knew it, they were liable for the combined result. This instruction was held to be erroneous. The ground of action, it was there said, is not the deposit of the dirt in the dam, but the negligent act above. The defendants' liability, therefore, began with the act on their own land, and they were responsible for the consequences; and, as the negligent act was separate and independent of the acts of the other miners, it was several when committed, and did not become joint, because the general consequences were united. " Without concert of action," said this court in the case cited, " no joint suit could be brought against the owners of all the collieries, and clearly this must be the test; for, if the defendants can be held liable for the acts of all the others, so each and every other owner can be made liable for all the rest, and the action must be joint and several. But the moment we should find them jointly sued, then the want of concert and the several liability of each would be apparent. These principles are fully sustained by the following cases: Russell v. Tomlinson, 2 Conn. 206; Adams v. Hall, 2 Vt. 9; Van Steenburgh v. Tobias, 17 Wend. 562; Buddington v. Shearer, 20 Pick. 477; Auchmuty v. Haam, 1 Denio 495; Partenheimer v. Van Order, 20 Barb. 479." Un-

Opinion of the Court.

less the negligence of two persons is joint and concurrent, each is liable for his own negligence only: Boyd v. Insurance Patrol, 113 Pa. 269. To the same effect are the cases of Seely v. Alden, 61 Pa. 306; Leidig v. Bucher, 74 Pa. 67; and *Little Schuylkill Co.* v. French, 81* Pa. 366. It is a matter of no consequence whatever that the stream was not a public highway: that fact could not in any way affect the principle referred to; and, if the Highland Coal Co. was not a joint tortfeasor, it is immaterial in what form the release was effected, whether by deed or otherwise.

In *Pittsb. etc. Ry. Co.* v. Vance, 115 Pa. 332, we said: "In order that a witness may be competent to testify intelligently as to the market value of land, he should have some special opportunity for observation. He should, in a general way and to a reasonable extent, have in his mind the data from which the proper estimate of value ought to be made. If interrogated, he should be able to disclose sufficient actual knowledge of the subject to indicate that he is in a condition to know what he proposes to state, and to enable the jury to judge of the probable, approximate accuracy of his conclusions." To this effect, also, is *Curtin* v. Railroad Co., 135 Pa. 20. Michael Campbell, a witness produced by the plaintiff, said that he was twenty-six years of age; that he had lived in the neighborhood twelve or thirteen years, and was driving a milk wagon for his father; he was therefore but thirteen years of age when the defendants commenced operations. The plaintiff proposed to prove by this witness the market value of the land free from this deposit of coal dirt, and the market value as affected by it. This necessarily implied a knowledge, on the part of the witness, of the nature and condition of the land before the deposit was made; but he testified to nothing which justified the admission of his testimony on this point. As to his knowledge of its previous condition, he testified, on cross-examination, as follows:

"Q. How old are you? A. Twenty-six. Q. You say that the stream has been bad longer than you can remember? A. Well, no; not so long that I can't remember it. Good while ago, when I was a small boy. I never took any notice of it. Of course, I know cattle used to drink it at that time. Q. Did you ever see Gallagher's land before it was covered

with coal dirt? A. I have seen it, yes sir; but I have not been through it. I saw it. Q. That is, when you were a boy? A. Yes, sir; I worked for Mr. Heinsen. Q. That creek bottom along there was a swampy piece of ground, wet piece of ground? A. I could not speak for Mr. Gallagher's, but Mr. Heinsen's I passed with horses on the opposite side of the creek. Q. The land above the bottom is all dry land, and there is where the land has been cleared and cultivated; there was no part of Gallagher's land cleared before the coal dirt was put on? A. Not that I know of. Q. Was it a laurel swamp, as described by Mr. Benner, the surveyor? A. That I could not say. Q. Your father's place is somewhere about two miles below Gallagher's? A. Two miles or a mile and a half, down along the Wetherly road. Q. You live with your father? A. Yes, sir."

The witness might, perhaps, have been competent to testify as to the value of the land after the injury, but it is plain by his own statement that he knew nothing of its nature and character before the injury. He did not pretend to know whether it was dry land, or merely a laurel swamp. How was it possible, therefore, for him to testify as to the value of the land free from the injury complained of?

The judgment is reversed, and a venire facias de novo awarded.