**JOHN B. KELLY, Inc., v. LEHIGH NAVIGATION COAL CO., Inc., et al.**
**Civil Action No. 3184.**

District Court, E. D. Pennsylvania.

March 15, 1944.

John Morgan Davis and Joseph Sharfsin, both of Philadelphia, Pa., for plaintiff.

E. Russell Shockley (of Schnader & Lewis), William A. Schnader, Arthur Littleton, William Clarke Mason, Thomas C. Egan, and Edwin W. Semans, all of Philadelphia, Pa., Penrose Hertzler, Ralph M. Bashore, George H. Kaercher, Walter Sidoriak, H. W. Lightstone, and L. L. Frank, all of Pottsville, Pa., J. Hayden Oliver, of Scranton, Pa., Joseph R. Sherman, of Hazelton, Pa., and James P. Bohorad, of Mahanoy City, Pa., for defendants.

BARD, District Judge.

Defendants have filed motions to dismiss the complaint and motions for a more definite statement or for bill of particulars.

The plaintiff in this action is engaged in the business of brick masonry construction work, and owns a property having a frontage on the Schuylkill River, in Philadelphia, on which there are located its piers and docks. The complaint alleges that the sixteen companies named as defendants are engaged in the operation of mines and collieries located on land adjacent to the Schuylkill River or its tributary streams, upstream of plaintiff's property. It is further alleged that defendants are discharging, and for a long time have discharged, coal dust, culm and various other refuse materials into these waters in a negligent, reckless, wilful and wanton manner, the result of which has been to impair the navigability of the river, to raise its bed and to narrow its channel. As a further result, it is alleged that any abnormal increase in the level of its waters causes it to overflow its banks and to do great damage to plaintiff's property and business. The complaint sets forth that such damage is brought about by the "united and combined acts" of the defendants in thus discharging waste materials, and that such materials and deposits are so "united, combined and intermingled within the waters of said Schuylkill River and its tributary streams as to be impossible of tracing to any individual defendant." Injunctive and other relief is sought in the complaint.

The motion to dismiss challenges the jurisdiction of this court to hear and determine this action. The allegation of the complaint with respect to the jurisdiction of the federal court reads: "Plaintiff is a corporation organized and existing under the laws of the State of Delaware and the defendants are corporations organized and existing under the laws of the Commonwealth of Pennsylvania. The amount in controversy exceeds, exclusive of interest and costs, the sum of Three Thousand Dollars ($3,000.)."

Defendants' contention is that any liability resulting from the acts set forth in the complaint is, under the law of Pennsylvania, several and not joint, and that claims against several tort-feasors may not be aggregated to establish the requisite amount in controversy for federal jurisdictional purposes.

I am of the opinion that this contention is valid under the authorities. The Pennsylvania cases have uniformly held that the liability of two or more independent mining companies to persons injured by erosion of culm deposits and discharge of waste into streams is not joint, and that each company is responsible for only the injury caused by its own acts, no matter how difficult it may be to separate this injury from that caused by the acts of other companies. Little Schuylkill Navigation Railroad & Coal Co. v. Richards' Adm'r, 57 Pa. 142, 98 Am.Dec. 209; Gallagher v. Kemmerer, 144 Pa. 509, 22 A. 970, 27 Am. St.Rep. 673; Eckman v. Lehigh and Wilkes-Barre Coal Co., 50 Pa.Super. 427.

In the Little Schuylkill Navigation case, supra, the Supreme Court of Pennsylvania, in reversing a judgment holding one mine owner responsible for damages resulting from silt discharge on the theory that he knew that other mine owners were also discharging silt and that his acts were combined with theirs to cause a single injury to the plaintiff, said at page 146 of 57 Pa., 98 Am.Dec. 209:

"It is immaterial what may be the nature of their several acts, or how small their share in the ultimate injury. If, instead of coal-dirt, others were felling trees and suffering their tops and branches to float down the stream, finally finding a lodgment in the dam with the coal-dirt, he who threw in the coal-dirt, and he who felled the trees would each be responsible for the acts of the other. In the same manner separate trespassers who should haul their rubbish upon a city lot, and throw it upon the same pile, would each be liable for the whole, if the final result be the only criterion of liability. But the fallacy lies in the assumption that the deposit of the dirt by the stream in the basin is the foundation of liability. It is the immediate cause of the injury, but the ground of action is the negligent act above. The right of action arises upon the act of throwing the dirt into the stream—this is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant's act upon his own land, and this act was wholly separate, and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. The union of conse-

quences did not increase his injury. If the dirt were deposited mountain high by the stream his dirt filled only its own space, and it was made neither more nor less by the accretions. True, it may be difficult to determine how much dirt came from each colliery, but the relative proportion thrown in by each may form some guide, and a jury in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand. But the difficulty of separating the injury of each from the others would be no reason that one man should be held to be liable for the torts of others without concert. It would be simply to say, because the plaintiff fails to prove the injury one man does him, he may therefore recover from that one all the injury that others do.

"This is bad logic and hard law. Without concert of action no joint suit could be brought against the owners of all the collieries, and clearly this must be the test; for if the defendants can be held liable for the acts of all the others, so each and every other owner can be made liable for all the rest, and the action must be joint and several. But the moment we should find them jointly sued, then the want of concert and the several liability of each would be apparent. These principles are fully sustained by the following cases: Russell v. Tomlinson et al., 2 Conn. 206; Adams v. Hall, 2 Vt. 9 [19 Am.Dec. 690]; Van Steenburgh v. Tobias, 17 Wend. [N. Y.] 562 [31 Am.Dec. 310]; Buddington v. Shearer, 20 Pick. [Mass.] 477; Auchmuty v. Ham, 1 Denio [N.Y.] 495; Partenheimer v. Van Order, 20 Barb. [N.Y.] 479."

In Gallagher v. Kemmerer, supra, the Supreme Court said at page 517 of 144 Pa., 22 A. at page 970, 27 Am.St.Rep. 673: "It is argued, on the part of the appellants, that the injury to which the plaintiff was subjected was of such a character that it could not, as between the parties who caused it, be divided, so as to determine in what proportion it was caused by each; and that, even if the defendants' mines had not been operated, the mining operations of the Highland Coal Company would have resulted in the same injury. It is true that the injury complained of may have been caused in part by the operations of the Highland Coal Company, conducted contemporaneously with the operations of the defendants' mines, and that it would be difficult, if not quite impossible, to separate and ascertain, definitely or certainly, the proportion of the whole damage done by each of these operations, respectively. But these several operations were entirely independent of each other. They were several miles apart, and the ownership, management, and control were wholly distinct and separate. There was no concert of action, or common purpose or design, which would support the theory of joint injury. The case, in this branch, is ruled by [Little Schuylkill] Navigation [Railroad and Coal] Co. v. Richards, 57 Pa. 142 [98 Am.Dec. 209]."

And in the Eckman case, supra, the Superior Court said at page 431 of 50 Pa.Super.: "A joint action cannot be maintained against several proprietors of coal operations acting independently, who thus cast culm into a stream, which is washed onto the land of another, but each is liable for the proportion of damages he caused, and that only."

Since, under the Pennsylvania law, the attempt of the plaintiff to allege a joint liability on the part of the plaintiff to this action must fail, the complaint does not allege facts necessary to show federal jurisdiction. It is settled that when two or more defendants severally liable to a plaintiff are joined in one action, the amounts of the claims may not be aggregated to establish the amount in controversy necessary to sustain jurisdiction of the federal courts. In Walter v. Northeastern R. Co., 147 U.S. 370, 13 S.Ct. 348, 37 L.Ed. 206, the Supreme Court held that it was error for the circuit court to take jurisdiction of an action by a single plaintiff to enjoin the authorities of various counties from enforcing an allegedly unconstitutional tax where the amount involved in each county was less than the jurisdictional requirement. Said the Court at page 373 of 147 U.S., 13 S.Ct. at page 349, 37 L.Ed. 206: "Is the plaintiff entitled to join them all in a single suit in a federal court, and sustain the jurisdiction by reason of the fact that the total amount involved exceeds $2,000? We think not. It is well settled in this court that when two or more plaintiffs, having several interests, unite, for the convenience of litigation, in a single suit, it can only be sustained in the court of original jurisdiction, or on appeal in this court, as to those whose claims exceed the jurisdictional amount, and that, when two or more defendants are sued by the same plaintiff in one suit, the test of jurisdiction is the

joint or several character of the liability to the plaintiff. This was the distinct ruling of this court in Seaver v. Bigelows, 5 Wall. 208 [18 L.Ed. 595]; Russell v. Stansell, 105 U.S. 303 [26 L.Ed. 989]; Farmers' Loan & Trust Co. v. Waterman, 106 U.S. 265, 1 S.Ct. 131 [27 L.Ed. 115]; Hawley v. Fairbanks, 108 U.S. 543, 2 S.Ct. 846 [27 L.Ed. 820]; Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163 [29 L.Ed. 329]; Gibson v. Shufeldt, 122 U.S. 27, 7 S.Ct.1066 [30 L.Ed. 1083]; Clay v. Field, 138 U.S. 464, 11 S.Ct. 419 [34 L.Ed. 1044]. * * * In short, the rule applicable to several plaintiffs having separate claims, that each must represent an amount sufficient to give the court jurisdiction, is equally applicable to several liabilities of different defendants to the same plaintiff."

The law on this question is well summarized in 1 Moore's Fed.Practice, 542, 543:

"Where two or more defendants are joined by the same plaintiff in one suit, the pecuniary test of jurisdiction is ordinarily founded on the joint or several character of their liability. If their liability is joint or common, the value of the matters in controversy between them and the plaintiff is the jurisdictional sum. * * *

"If liability is several, ordinarily, the suit can be sustained only as against those whose respective controversies severally involve matters exceeding the jurisdictional amount."

In Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001, the Supreme Court reiterated the same rule with respect to the converse situation in which several plaintiffs assert several claims against one defendant in a single action. Said the present Chief Justice at page 589 of 306 U.S., 59 S.Ct. at page 748, 83 L.Ed. 1001: "It is a familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements. Wheless v. [City of] St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883."

The procedural right to join independent causes of action in a single suit in no way affects the independent character of the claims thus asserted. In commenting on this question the Supreme Court in Schwed v. Smith, 106 U.S. 188, at page 190, 1 S.Ct. 221, at page 222, 27 L.Ed. 156, said: " * * * although the proceeding is in form but one suit, its legal effect is the same as though separate suits had been begun on each of the separate causes of action."

Since, therefore, the action against these defendants is, under Pennsylvania law, several and not joint, and the complaint fails to show that the amount in controversy with respect to the claim against any single defendant exceeds the jurisdictional amount, it is insufficient to show that this court has jurisdiction of the cause. See Clark v. Paul Gray, Inc., supra, 306 U.S. at page 589, 59 S.Ct. at page 748, 83 L.Ed. 1001: "The general allegation in the bill of complaint that 'the amount involved in this litigation is in excess of' $3,000 and the finding of the court that 'the amount involved in the within action' exceeds the jurisdictional amount, give no indication that the amount in controversy with respect to the claim of any single plaintiff exceeds the jurisdictional amount and are insufficient to show that the district court had jurisdiction of the cause. Pinel v. Pinel, supra." Since there has been no sufficient showing of jurisdiction, it is unnecessary to consider the other grounds urged by the defendants in support of their motions to dismiss the complaint or of their alternative motions for a more definite complaint or a bill of particulars.

Defendants' motions to dismiss the complaint are granted.