57  142
195  394

57  142
d198  567

57  142
200  153

57        142
f 31 SC ¹382

57  142
e40SC 571

# Little Schuylkill Navigation, Railroad and Coal Company *versus* Richards's Administrator.

1. A dam was filled by deposits of coal-dirt from different mines on the stream above the dam, some worked by defendants and their tenants and others by persons entirely unconnected with the defendants. The court charged in substance that if at the time the defendants were throwing coal-dirt into the river, the same thing was being done at other collieries and they knew of it, they were liable for the combined results of all the deposits. *Held* to be erroneous.

2. The ground of the action is not the deposit of the dirt in the dam by the stream, but the negligent act above.

3. Throwing the dirt into the stream is the tort, the deposit is only the consequence.

4. The liability of the defendants began with their act on their own land, and was wholly separate and independent of concert with others. Their tort was several when committed, and did not become joint because its consequences united with other consequences.

5. The defendants are not liable for acts of their tenants, not done by their authority or command.

6. As a general rule, with some exceptions, the sending out of papers with the jury, is regulated by the sound discretion of the court trying the case.

January 24th 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county*: No. 60, to January Term 1868.

This was an action on the case to March Term 1858, brought by Matthias S. Richards against the Little Schuylkill Navigation, Railroad and Coal Company.

The declaration contained two counts. The first was for injury to the forge-dam of plaintiff, upon the Little Schuylkill river, by reason of defendants, by their servants and employees, casting and throwing into said river, above the dam, and near to and along the said stream, large quantities of coal-dirt, slate and loose earths, which, by the action of the water, were carried down to and filled up the said dam. The second was for burning up cordwood and chestnut sprouts along line of defendants' railroad, by means of the negligent use of locomotives thereon. The plea was, " not guilty."

The plaintiff having died, his administrator, William R. Gries, was substituted.

The property to which the dam belonged was the Hecla Forge, which is situated on the Little Schuylkill river, about ten miles below Tamaqua, and which, prior to February 4th 1851, belonged to Young & Jones, who on that day sold it by articles of agreement to Judge Richards; the sale was consummated by deed May 20th 1853.

Whilst the property was owned by Young & Jones, the dam

had been nearly filled with coal-dirt, but in 1850 a very great freshet occurred which took away the dam breast, and entirely cleared the basin of the dam of the dirt. Judge Richards rebuilt the dam in 1851, immediately after he bought the property; he had both a forge and saw-mill, and soon afterwards the coal-dirt was deposited in the dam and race so as greatly to impede the works, and at some times almost wholly to obstruct them.

The defendants own a railroad which extends for about twenty-five miles along the Little Schuylkill river, and are also owners of a large body of coal lands situate on the same river and its branches, near Tamaqua. From 1849 to 1858, these lands were leased to tenants who mined the coal, and whose leases, for most of that time, required them to deposit coal-dirt in such places as should be designated by the company.

Besides the mines of the defendants, there were a number of others on the Little Schuylkill and its tributaries, above Hecla Forge, owned by different owners, entirely independent of the defendants and having no connection with them. The dam was filled by the coal-dirt coming down these several streams into it from all these mines. There was very much evidence bearing upon the cause of action in the case, including the extent of the participation of the defendants in producing the injury to the plaintiffs' dam. The statement above given is sufficient for an understanding of the principal point discussed and decided by the Supreme Court.

On the trial, evidence having been given by the plaintiff that the defendants controlled the places of the deposit of the dirt by their several tenants, he called John Donaldson, who testified that he was superintendent, &c., of mines of the defendants worked by his father. The plaintiff then proposed to ask the witness whether any objection was made to him as superintendent of his father's mines, to the place of deposit of coal-dirt, and the manner of depositing the same from such mines, to be followed by offering in evidence the leases from the company to Donaldson, by which it is provided that the coal-dirt shall be deposited in such position and places as the said company or their agents may from time to time direct.

The offer was objected to by the defendants, admitted by the court, and a bill of exceptions sealed.

The defendants called Nicholas Jones, a former owner of the land, who testified that the water-power was as much destroyed before the freshet in 1850, as at the trial, and that the injury to it was about the same.

They then offered in evidence two releases, dated February 26th 1848, and January 19th 1863, respectively, from Peter Jones and Nicholas Jones, for the purpose of showing that the defendants had already settled with the then owners of the land,

[Little Schuylkill Navigation Co. *v.* Richards's Administrator.]

and paid them in full for all damages by filling up the dam with coal-dirt prior to 1850.

Objected to by plaintiff, rejected by the court, and a bill of exceptions sealed.

The court charged, that there was no evidence in relation to fire.

The court, Ryon, P. J., amongst other things, charged :—

* * * " If you should find that the plaintiff's pond was filled up with coal-dirt deposited along the banks of the Schuylkill and its tributaries by the defendants, or under their direction, and by the Carters and the Lehigh Navigation Company, in such a manner and in such quantities as to be washed into the stream by the rains and by the ordinary and usual freshets, and that each knew that the other was at the same time so depositing their dirt—that is, if they were so depositing their dirt at the same time, and the acts of each were known to the other—we think either party would be liable for the whole damage. If the defendants were depositing their dirt, or directed their tenants to deposit it where it washed into this pond by the ordinary rains and freshets, at the same time others, with the knowledge of the defendants, were depositing dirt also, which washed into this pond by the ordinary rains and freshets, can you, under the evidence, apportion the damage done by each with any reasonable certainty ? How much of the defendants' dirt and how much of the others' washed down ? This case is unlike torts committed by different parties by independent acts, where the consequences flowing from the acts of each can be made reasonably certain by proof; for this dirt was deposited by the operation of years, and, as testified to, at some points it would wash down the stream, and at others it was put in the same place; and hence no approximate estimate can be made of how much or how little reached this pond from such deposits." * * *

" If you find for the plaintiff, the measure of damages is the damage sustained at the commencement of this suit in 1858. The plaintiff is not entitled to recover for permanent or prospective injury. The measure is the use of the mill and forge—what they were worth to the plaintiff for business purposes. This use may be measured by any proper mode of estimating its annual value. The plaintiff has proved the annual rental of the property, as unaffected and as affected by the coal-dirt. We know of no better way, but submit the whole question to you. If you find for the plaintiff, he is entitled to recover what damages you think he has suffered from the acts of the defendants from 1851, the time he purchased, to the time suit was brought."

And refused to charge as requested by the defendants, that the plaintiff could not recover for the profits he might have made, or the rents he might have received, had the dam not been injured.

[Little Schuylkill Navigation Co. v. Richards's Administrator.]

The court, against the objection of the defendants, permitted the plaintiff to send out with the jury a calculation of damages, based upon the estimated annual rent of the forge, with interest from the end of each year; and also a claim for wood burned and timber land destroyed.

The jury found for "the plaintiff for $11,750, for damages sustained by the defendants filling their dam with coal-dirt. This amount includes damages up to 1858, at the time the suit was brought, and interest up to the present date, June 22d 1867."

Judgment was entered generally against the defendants for $11,750.

The defendants took a writ of error. They assigned thirteen errors—to the admission and rejection of evidence, the charge of the court, and permitting the statement to go out with the jury.

*F. B. Gowen* and *J. Bannan* (with whom was *T. R. Bannan*), for plaintiffs in error.—A landlord is not liable for the torts of his tenant, unless committed by his authority: Taylor on Landlord and Tenant, § 175; Offerman v. Starr, 2 Barr 394; Earl v. Hall, 2 Metc. 353. Every person is liable only for his own acts or the acts of others under his direction, or of others acting jointly or in concert with him: Hilliard on Torts 441; Addison on Wrongs 106, 107, 159; Hilliard on Remedies for Torts 178; Partenheimer v. Van Order, 20 Barb. 479; Buddington v. Shearer, 20 Pick. 477; Auchmutz v. Haen, 1 Denio 495; Van Steenburg v. Tobias, 17 Wend. 562; Adams v. Hall et al., 2 Verm. 9; Russel v. Tomlinson et al., 2 Conn. 206; Williams v. Sheldon, 10 Wend. 654; Bard v. Yohn, 2 Casey 482; Klauder v. McGrath, 11 Id. 128.

There is a great distinction between cases of concurring negligence of two strangers, and several and distinct trespasses by different persons not acting in concert: Colegrove v. The New York and Harlem and The New York and New Hampshire Railroad Companies, 20 N. Y. Rep. 492; Stone v. Dickinson, 5 Allen 29.

Calculations from items of an account may be sent out with the jury, but not statements of damages based on witnesses' estimates: Commonwealth v. Lebo, 13 S. & R. 175; Frazier v. Funk, 15 Id. 26; Morrison v. Moreland, Id. 61; Hamilton v. Glenn, 1 Barr 340; Hall v. Rupley, 10 Id. 231; Kline v. Gundrum, 1 Jones 242; McKelvy v. De Wolfe, 8 Harris 374; Spence v. Spence, 4 Watts 165; Woods v. Waud, 3 Exch. 748.

*F. W. Hughes*, with whom were *G. E. Farquhar* and *F. Hoffman*, for defendant in error.

The opinion of the court was delivered, February 3d 1868, by

7 P. F. SMITH—10

[Little Schuylkill Navigation Co. *v.* Richards's Administrator.]

AGNEW, J.—All the assignments of error, from the 4th to the 11th inclusive, involve substantially the same question, and may be considered together. The plaintiff's intestate was the owner of a dam and water-power upon the Little Schuylkill river. In process of time, from 1851 to 1858, the basin of the dam became filled with the coal-dirt, washed down by the stream from the mines above, of several owners, upon Little Schuylkill, Panther creek and other tributaries. They were separate collieries, worked independently of each other. The plaintiff seeks to charge the defendants below with the whole injury caused by the filling up of his basin. The substance of the charge and answers to points was, that if at the time the defendants were engaged in throwing the coal-dirt into the river, about ten miles above the dam, the same thing was being done at the other collieries, and the defendants knew of this, they were liable for the combined result of all the series of deposits of dirt from the mines above from 1851 till 1858. The aspects of the case were varied, by deposits being made on and along the banks of the streams, which were carried away by ordinary rains and freshets; but the above is the most direct statement of the injury alleged, and is taken therefore as the test of the principle laid down by the court. The doctrine of the learned judge is somewhat novel, though the case itself is new; but, if correct, is well calculated to alarm all riparian owners, who may find themselves by a slight negligence overwhelmed by others in gigantic ruin.

It is immaterial what may be the nature of their several acts, or how small their share in the ultimate injury. If, instead of coal-dirt, others were felling trees and suffering their tops and branches to float down the stream, finally finding a lodgment in the dam with the coal-dirt, he who threw in the coal-dirt, and he who felled the trees would each be responsible for the acts of the other. In the same manner separate trespassers who should haul their rubbish upon a city lot, and throw it upon the same pile, would each be liable for the whole, if the final result be the only criterion of liability. But the fallacy lies in the assumption that the deposit of the dirt by the stream in the basin is the foundation of liability. It is the immediate cause of the injury, but the ground of action is the negligent act above. The right of action arises upon the act of throwing the dirt into the stream—this is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant's act upon his own land, and this act was wholly separate, and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. The union of consequences did not increase his injury. If the dirt were deposited mountain high by the stream his dirt filled only

its own space, and it was made neither more nor less by the accretions. True, it may be difficult to determine how much dirt came from each colliery, but the relative proportions thrown in by each may form some guide, and a jury in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand. But the difficulty of separating the injury of each from the others would be no reason that one man should be held to be liable for the torts of others without concert. It would be simply to say, because the plaintiff fails to prove the injury one man does him, he may therefore recover from that one all the injury that others do.

This is bad logic and hard law. Without concert of action no joint suit could be brought against the owners of all the collieries, and clearly this must be the test; for if the defendants can be held liable for the acts of all the others, so each and every other owner can be made liable for all the rest, and the action must be joint and several. But the moment we should find them jointly sued, then the want of concert and the several liability of each would be apparent. These principles are fully sustained by the following cases: Russell v. Tomlinson et al., 2 Conn. 206; Adams v. Hall, 2 Vermont 9; Van Steinberg v. Tobias, 17 Wend. 562; Buddington v. Sherer, 20 Pickering 477; Auchmutz v. Haen, 1 Denio 495; Partenheimer v. Van Order, 20 Barb. 479. These were cases where the dogs of several owners united in killing sheep, and where the cattle of different owners broke into an enclosure and united in the damage. The concert and united action of the dogs and cattle were held to create no joint liability of their owners, notwithstanding the difficulty of determining the several injury done by the animals of each. The rule laid down in the last case was that where the owner of the garden could not prove the injury of each cow, the jury would be justified in concluding that each did an equal injury. Several cases were cited in opposition, but do not, in our opinion, support the doctrine of the charge.

In Stone v. Dickerson, 5 Allen 27, where an officer made an arrest at the same instant upon nine writs, and the parties were held jointly liable for the trespass, the ground of action was the arrest itself, a single act, incapable of division or separation, but being authorized by all, all were held to have been concerned in the very act, which each authorized the same agent to commit. In Colgrove v. N. Y. and N. H. and N. Y. and Harlem Railroad Companies, 20 N. Y. Rep. 492 (6 Smith), the two companies were using the same track by joint arrangement governed by common rules, the collision of their trains was owing to mutual and concurring negligence, and the injury which was single, was therefore their concurrent and direct act. They were held to be jointly liable because of their joint use of the track, their common duty

[Little Schuylkill Navigation Co. *v.* Richards's Administrator.]

to all travelling the road, and their concurrent negligence in the direct act which caused the injury. The case of the party-wall in this state was put on the same ground. The distinction between that case and this was sharply defined by our Brother Strong. It was there said that the maintenance of an insecure party-wall was a tort in which both participated. The act was single, and it was the occasion of the injury. The case is not to be confounded with actions of trespass brought for separate acts done by two or more defendants. Then if there be no concert, no common intent, there is no joint liability. Here, the keeping of the wall safe was a common duty, and a failure to do so was a common neglect: Klauder *v.* McGrath, 11 Casey 128. In principle, Bard *et al. v.* Yohn, 2 Id. 482, more resembles this case. There the effects of the independent acts of the defendants on the opposite sides of the street united in causing the injury, but they were not jointly liable, because there was no concert in the acts themselves.

It is needless to notice other questions arising upon the alleged negligence, excepting to say that the defendants as lessors were not liable for the acts of their tenants, not shown to have been done under their authority or command. The mere relation of landlord will not make the lessor liable for the negligence of his tenant: Bears *v.* Ambler, 9 Barr 193; Offerman *v.* Starr, 2 Id. 394.

Taking together all the judge said upon the measure of damages, it is not clear he committed a manifest error. There was an inaccuracy in the answer to the defendants' 7th point, as to the profits that might have been made, which would appear to allow too much latitude in estimating imaginary losses, and will be corrected in another trial. The jury, however, seem to have gone astray in estimating the property as a total loss from 1851 to 1858. The correction, however, fell within the province of the court below.

The objection to the calculations sent out with the jury cannot be urged. No bill of exception was sealed. As a general rule, with some exceptions, the sending out of papers with the jury is regulated by the sound discretion of the court: O'Hara *v.* Richardson, 10 Wright 389.

The bills of exception to the evidence need no particular notice. We perceive nothing in them pointing to any manifest error.

The judgment is reversed, and a *venire facias de novo* awarded.