A. W. SWAIN *v.* TENNESSEE COPPER CO. *et al.*

and

THOMAS L. COLE *v.* DUCKTOWN SULPHUR, COPPER &
IRON CO., LIMITED, *et al.*

(*Knoxville.*   September Term, 1903.)

1. **NUISANCE. Resulting from separate acts of independent.
   persons is no cause for joint action.**
   Where two distinct corporations in proximity to each other
   operate their respective and separate plants for reducing and
   converting copper ores into metal ingots or commercial cop-
   per, from each of which are emitted immense volumes of
   noxious, foul, and poisonous smoke and gases, which after-
   wards indistinguishably mingle, commingle, and intermingle
   into clouds of noxious, deadly, and poisonous vapors, creating
   an actionable nuisance, but there is no common ownership or
   operation of the plants, no community of interest, nor common
   design, purpose, concert, or joint action, a suit by an adjoining
   or adjacent property owner against them jointly for damages
   caused by their wrongful acts so separately committed is not.
   maintainable.   ·

   Cases cited and approved:   Ducktown Sulphur, Copper & Iron:
   Co. v. Barnes, 60 S. W., 600; Dyer v. Hutchins, 87 Tenn., 198;
   Gay v. State, 90 Tenn., 645; Chipman v. Palmer, 77 N. Y., 52;
   Little Schuylkill, etc., Co. v. Richards, 57 Pa., 142; Lull v. Fox,.
   & Wis. Imp. Co., 19 Wis., 100; Miller v. Highland Ditch Co., 87
   Cal., 430; Blaidsell v. Stephens, 14 Nev., 17; Valparaiso v. Mof-
   fitt, 12 Ind. App., 250; Gallagher v. Kemmerer, 144 Pa., 509;
   Sloggy v. Dilworth, 38 Minn., 179; People v. Oakland Water
   Co., 118 Cal., 234; Martinowsky v. Hannibal, 35 Mo. ·App.,.
   70; Adams v. Hall, 2 Vt., 9; Van Steenburgh v. Gray
   and Tobias, 17 Wend., 562; Russell v. Tomlinson & Hawkins,.

Swain v. Tennessee Copper Co.

2 Conn., 206; Loughran v. Des Moines, 72 Iowa, 382; Sellick
v. Hall, 47 Conn., 260; Evans v. Railroad, 96 N. C., 45.

Cases cited and distinguished: Railroad v. Shelton, 89 Tenn.,
424; Snyder v. Witt, 99 Tenn., 619; Railroad v. Jones, 100
Tenn., 511; Beopple v. Railroad, 104 Tenn., 420.

2. **TORT. Several is not made joint by blending of conse-
quences.**

A tort which is several when committed cannot be made joint
by matters accruing subsequently over which the wrongdoer
has no control; the mere union and blending of consequences
will not have the effect to make torts originally several joint.
(*Post, pp.* 440-441.)

Cases cited and approved: Dyer v. Hutchins, 87 Tenn., 198;
Gray v. State, 90 Tenn., 645; Chipman v. Palmer, 77 N. Y., 52;
Little Schuylkill, etc., Co. v. Richards, 57 Pa., 142; Miller v.
Highland Ditch Co., 87 Cal., 430; Gallagher v. Kemmerer, 144
Pa., 509; Lull v. Fox & Wis. Imp. Co., 19 Wis., 100.

3. **SAME. Same. Difficulty of separating damages does not
alter rule.**

The difficulty of ascertaining the extent of the injury done by
each of the several wrongdoers furnishes no reason for allow-
ing a joint action against them all, or making each severally
and jointly liable for all the damages done by all the parties
acting independently of each other. (*Post, pp.* 442-449.)

Cases cited and approved: Ducktown Copper & Iron Co. v.
Barnes, 60 S. W., 600; Dyer v. Hutchins, 87 Tenn., 198; Gay v.
State, 90 Tenn., 645; Chipman v. Palmer, 77 N. Y., 52; Little
Schuylkill, etc., Co. v. Richards, 57 Pa., 142; Gallagher v. Kem-
merer, 144 Pa., 509.

4. **SAME. Joint and several liability for by joint or several ac-
tion, when.**

All the wrongdoers are jointly and severally liable for all the
damages done the injured party, which may be recovered in

joint or several actions, where they committed the tort jointly, by force directly applied, or in the pursuit of a common purpose or design, or by concert, or in the advancement of a common interest, or as the result and effect of joint and concurrent negligence, though all do not equally contribute to the injury done, or torts may be joint on account of the relationship of the parties, as husband and wife, master and servant, partners and such like. (*Post, pp.* 437-439.)

Cases cited and approved: Railroad v. Shelton, 89 Tenn., 425; Snyder v. Witt, 99 Tenn., 619; Railroad v. Jones, 100 Tenn., 511; Beopple v. Railroad, 104 Tenn., 420.

5. **DAMAGES.** For injuries resulting from a lawful business done with best appliances.

An action lies for damages to property, or for interference with its enjoyment, caused by a lawful business, useful to the public, carried on at a suitable locality, with the best and most approved appliances and methods. (*Post, pp.* 436-437.)

Case cited and approved: Ducktown Sulphur & Iron Co. v. Barnes, 60 S. W., 600.

6. **SAME.** Consequential damages from nuisance must be specially pleaded and proved, when.

Damages resulting from a nuisance caused by the conduct of a number of persons acting independently of each other are not the direct and necessary consequences of their wrongful conduct, but merely the natural results, known as "consequential damages" for which no action will lie, unless they are special, and are specially averred and proved. (*Post, p.* 442.)

Case cited and approved: Lowery v. Petree, 8 Lea, 678.

Swain v. Tennessee Copper Co.

### FROM POLK.

Appeal from the Circuit Court of Polk County.—
GEORGE L. BURKE, Judge.

B. B. C. WITT and J. E. MAYFIELD, for Swain and Cole.

CORNICK, WRIGHT & FRANTZ and R. M. COPELAND, for
Tennessee Copper Company.

J. G. PARKS and G. C. HYATT, for Ducktown Sulphur
& Copper Company.

MR. JUSTICE SHIELDS delivered the opinion of the
Court.

These two cases, brought against the same defendants
and involving the same questions, were heard together
in this court, and will be so considered in this opinion.

The plaintiffs, A. W. Swain and Thos. L. Cole, brought
their separate suits in the circuit court of Polk county
against the Tennessee Copper Company, a corporation
under the laws of New Jersey, and the Ducktown Sul-
phur, Copper & Iron Company, Limited, a corporation
under the laws of the kingdom of Great Britain and
Ireland, jointly, to recover damages sustained by them,
respectively, caused by a nuisance created and main-

111 Tenn—28

tained by the defendants in the separate management and operation of the plants severally erected and owned by them.

The defendants-interposed separate demurrers for misjoinder, which were sustained by the trial judge, and the plaintiffs have brought the cases before this court for review.

It appears from the allegations of the declarations, which are practically the same, that the plaintiffs are the owners of lands situate and lying near Ducktown, Polk county, Tenn., upon which they reside, and have gardens, orchards, and inclosed fields for the cultivation of fruits, vegetables, grains, grasses, and other farm products, and valuable growing timber.

That the defendants, separate and independent corporations, created and organized for the purpose of carrying on the business of mining copper ores, and converting them into metal ingots suitable for commerce, more than three years before the bringing of these actions located their respective plants near Ducktown, and there severally erected furnaces, hearths, and fireplaces for roasting, reducing, and converting ores into commercial copper, and were respectively carrying on said business extensively in proximity to each other, and that in their said business, they unlawfully caused, created, and maintained a great nuisance at and around Ducktown, by sending out from their respective hearths, roast piles, and furnaces, into the pure air, immense volumes of noxious, foul, and poisonous smoke and gases, which,

ascending from their several and respective works into the atmosphere, therein became and were indistinguishably mingled, commingled, and intermingled into clouds of noxious, deadly, and poisonous vapor, which permeated the surrounding atmosphere, and steadily drifted over and on the premises of the plaintiffs; often covering the same for hours, poisoning the air, rendering difficult respiration, wrongfully and unlawfully burning, parching, and destroying plaintiffs' said gardens, orchards, crops, and timber, and impairing and expelling the convenience and comfort of their homes, whereby plaintiffs were injured and sustained damages, etc., for which they sue.

The declarations contain no averments of a common ownership or operation of the properties of the defendants, or any common design, purpose, concert, or joint action upon the part of the defendants in discharging the foul and poisonous fumes, gases, and smoke causing and maintaining the nuisance complained of; but, on the contrary, it clearly appears from them that the defendants are distinct corporations, owning separate plants, which they severally operate, without any connection, and independent of each other. The only averment tending to show joint action or common purpose is that the poisonous and noxious gases, fumes, and smoke which are discharged from the furnaces and roast heaps, after leaving the same and ascending into the air, there become commingled and indistinguishable, and there constitute a nuisance, which injures and destroys the prop-

erty of the plaintiffs. These injuries are not averred to be the result of force directly applied, or concurrent negligence of the defendants in the operation of their several respective plants, but the consequential effect of their said unlawful conduct.

The questions which this court is called upon to determine in these cases are not merely of pleading, but also of liability, or when one tortfeasor is liable for damages done by others to the same party, for the test of joint liability is whether each of the parties is liable for the entire injury done. If they are joint tortfeasors, each one is responsible for the damages resulting from the acts of all the wrongdoers, and they may all be sued severally or jointly; but, if they are not joint tortfeasors, each is liable only for the injury contributed by him, and can only be sued in a separate action therefor. These are most important questions, often far-reaching in their consequences, and deserve the most careful consideration.

The defendants, by their demurrers, do not, and could not successfully, deny that the averments of the declarations, if true, show an actionable nuisance, for which they are severally liable to the extent which they respectively contributed to its creation and maintenance.

This was so held in the case of *Ducktown Sulphur & Iron Co., Limited,* v. *Barnes and others*—a bill brought to enjoin the prosecution of certain suits instituted against the complainant in that cause to recover damages to the property of plaintiffs therein caused by it in

the operation of its plant at Ducktown in the same way complained of in these cases.

In the able opinion of the court of chancery appeals in that case, delivered by Judge Wilson, and adopted by this court, it is said:

"Assuming that complainant is engaged in a lawful business, and that it conducts it lawfully and prudently, and according to the latest and best-known methods established for the operation of such business, is it liable in damages for an injury to the property rights of another living in the vicinity, caused by the operation of its business? The principle is well settled that when a trade or business is carried on in such manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which causes material injury to the property itself, it amounts to a wrong to the neighboring owner, for which an action will lie; and it is no defense to such an action to prove that the place where the business is carried on at is a suitable locality, or that the business is lawful and one useful to the public, or that the best and most approved appliances and methods are used in the conduct and management of the business." *Ducktown Sulphur & Iron Co.* v. *Barnes et al.,* 60 S. W., 600.

What they do controvert is the contention of plaintiffs that they are joint tortfeasors, and jointly and severally liable for all the damages caused by both of the plants in question, and can be sued jointly therefor, and these are the points now before us for decision.

When a tort is committed by two or more persons jointly, by force directly applied, or in the pursuit of a common purpose or design, or by concert, or in the advancement of a common interest, or as the result and effect of joint concurrent negligence, there is no doubt but that all the tortfeasors are jointly and severally liable for all the damages done the injured party, and that these damages may be recovered in joint or several actions, although the wrongful conduct or negligence of some may have contributed less than that of others to the injury done.

Torts may also be joint on account of the relations of the parties, such as the joint liability of a husband and wife for the wife's torts, that of the master and servant for the latter's torts, and that of the principal and agent, employer and employee, partner and copartner, for the acts of the agent, employee, and copartner, when committed within the scope of the agency, employment, or partnership. *Snyder* v. *Witt,* 99 Tenn., 619, 42 S. W., 441; *Railroad* v. *Jones,* 100 Tenn., 511, 45 S. W., 681; *Electric Railway Co.* v. *Shelton,* 89 Tenn., 425, 14 S. W., 863, 24 Am. St. Rep., 614; 1 Jaggard on Torts, section 67; Cooley on Torts, p. 133.

The parties in all these cases are joint tortfeasors. The reason for holding them liable for all the damages inflicted by any of them is that they are all present, in person or by representation, and join in the wrongful act, or in some way knowingly aid in doing it, thereby consenting to and approving the entire wrong and in-

jury done.   The whole injury is committed by each and
all of the trespassers, and it is but just and right that
each of them should be held responsible for all the dam-
ages inflicted; and, the liability, being several and joint,
they may be sued separately or jointly.   But this is not
the rule where the tortfeasors act independently of each
other, without community of interest or concert of act-
ion, or common design or purpose, or concurrent acts
of negligence, or where the injury is not the result of
force directly applied, but the consequential effects of the
wrongful conduct or negligence constituting a nuisance.

Where the tortfeasors have no unity of interest, com-
mon design, or purpose or concert of action, there is no
intent that the combined acts of all shall culminate in
the injury resulting therefrom, and it is just that each
should only be held liable so far as his acts contribute to
the injury. . In such cases the party injured must pro-
ceed in separate actions against the several wrongdoers
for the proportion of the damages caused by them, re-
spectively.   This is the only reasonable and just rule
that can be applied.   If the law were otherwise, one
whose acts contributed in a very slight degree to the
wrong could be held for great damages done by others,
of whose wrongful conduct he did not know until after
it was done, and did not approve and consent to at any
time.

The allegations of the declarations upon which the
plaintiffs seem to rest their contention that the defend-
ants are jointly and severally liable for the entire dam-

ages caused by the nuisance resulting from the operation of the plants of defendants are those that the noxious and poisonous fumes and gases discharged from their respective roast heaps and furnaces become, when discharged, mingled and commingled in the air into one indistinguishable mass and cloud, and in this form drift over and upon plaintiffs' premises, and damage and destroy their property.

These allegations do not sustain the position of the plaintiffs. The wrong done by the defendants is the discharge of foul and offensive fumes and gases from their plants into the air, corrupting and poisoning the same. This is done by each of them upon its own premises, controlled and operated by it independently of, and without any connection or relation whatever with, the other. It is in every sense and by every definition a separate wrong, and it cannot be made joint because the consequences of it afterwards become blended and united with those wrought by other wrongdoers. A tort which is several when committed cannot be made joint by matters occurring subsequently, over which the tortfeasor has no control. The commingling of the gases does not cause those discharged by the different parties to be more injurious, but each has its own proportionate hurtful consequences, such as would have resulted if there had been no blending. If parties are to be held to be joint tortfeasors where the consequences of their wrongful acts become subsequently united, all torts, where similar injuries are inflicted to a person or his

property about the same time, are joint, because the injuries in such case will severally affect and aggravate each other, and the consequences of the several wrongs become more or less blended. This is not the law.

It seems to be settled by all the authorities that we have had access to that the mere union and blending of consequences will not have the effect to make torts originally several joint. *Chipman* v. *Palmer,* 77 N. Y., 52, 33 Am. Rep., 566; *Little Schuylkill, etc., Co.* v. *Richards,* 57 Pa., 142, 98 Am. Dec., 209; *Miller* v. *Highland Ditch Co.,* 87 Cal., 430, 25 Pac., 550, 22 Am. St. Rep., 254; *Gallagher* v. *Kemmerer,* 144 Pa., 509, 22 Atl., 970, 27 Am. St. Rep., 673; *Lull* v. *The Fox & Wis. Imp. Co.,* 19 Wis., 100.

If the rule was as contended by plaintiffs one who has caused an offensive odor by the slaughtering of one animal near a slaughterhouse where great numbers are killed, and an actionable nuisance created, would be held for the entire damage done; where the smoke of one chimney of a residence near a brickkiln which has become a nuisance united with that of the kiln, the owner of the residence would be liable for all the damages caused by the nuisance; and a citizen who allowed his private sewer to flow into a stream in which the sewers. of a large city were discharged, fouling and poisoning its waters, however small the taint caused by his private sewer, would be liable for the entire damage done.

No sound reason or principle can be found to support a rule which will work such injustice.

The difficulty of ascertaining the extent of the injury done by each of the several tortfeasors furnishes no argument against the rule as we have stated it. That a plaintiff may be embarrassed in proving the wrong done him by one person is no reason why he should recover his damages from another, who did not cause them, merely because he did the plaintiff a similar injury.

This rule has been held peculiarly applicable to actions for the recovery of damages caused by nuisances of the character of that in question, resulting from the conduct of a number of persons acting independently of each other, because the damages in such cases are not the direct and necessary consequences of the wrongful conduct of the defendants, but merely the natural results, known as "consequential damages," for which no action will lie unless they are special, (that is, not common to the general public), and which must be specially averred and proven. *Lowery* v. *Petree*, 8 Lea, 678.

The case of *Ducktown Copper & Iron Co., Ltd.,* v. *Barnes et al.,* supra, is also authority upon the question. It is there said:

"The authorities also meet the contention that another mining company is operating its business in the same vicinity. It is true, it is competent for plaintiff to show that the damages done, if any, to the property of appellees, was done in part by the smoke, gases, etc., emanating from the works of the Pittsburg & Tennessee Mining Company. In other words, the plaintiff is liable only for the damages caused by it, and not for the

damages caused by the operation of the works by an independent and separate corporation. The question of the amount of damages inflicted by appellees by the operation of the works of plaintiff is a matter to be determined by all the proof, and, in determination of this question, it is competent for plaintiff to show that smoke and gases are emitted by the works of the other company, which produce the damages, or some of them, complained of."

Or, in other words, defendant Ducktown Sulphur, Copper & Iron Company, complainant in that cause, was liable only for the injuries caused by the noxious, foul, and poisonous smokes and gases discharged from its own works, and not for those caused by the gases from the roast heaps and furnaces of another company, located in its vicinity, and acting independently of it; and, of course, it could not be sued jointly with such other company for the entire damage done by both companies. The case of *Gay* v. *State,* 90 Tenn., 645, 18 S. W., 260, 25 Am. St. Rep., 707, is also analogous. The trial judge there charged the jury that, although a pig-pen kept by the defendant in a city was not of itself sufficient to constitute a nuisance, yet, if it contributed, with other pens maintained by other persons in the neighborhood, to cause a nuisance, the defendant was liable for such nuisance; and it was held error by this court, on the ground that the defendant could only be held liable for the consequences which his own acts produced.

The case of *Dyer* v. *Hutchins,* 87 Tenn., 198, 10 S. W., 194, is to the same effect.

The plaintiff in that case sued the several owners of a number of dogs which united in worrying and killing his sheep, to hold them jointly liable for the damage done his property; and it was held that each one was liable only for the injury done by his dog, and that a joint action could not be maintained, although it was impossible to tell the damage done by any particular dog.

The rule is so stated in the leading text-books upon the subject.

In 2 Jaggard on Torts, p. 797, it is said:

"But the liability of joint contributors is not necessarily that of joint tortfeasors. If persons who maintain a nuisance act independently, and not in concert with others, each is liable for damages which result from his individual conduct only. And the fact that it may be difficult to actually measure the damages caused by the wrongful act of each contributor to the aggregate result does not affect the rule, or make any one liable for the acts of others."

Mr. Gould, in his work on the Law of Waters, section 222, says:

"In general, where two or more persons act independently in producing an injury, they are not jointly liable for the combined result of their acts, but the riparian owner may prevent each from discharging his contribution to that which becomes in the aggregate a nuisance.

"Where suit was brought for damage to a dam filled

by deposits of coal dirt from different mines on the stream, some of which were worked by the defendants and their tenants, and some by persons not connected with the defendants, the latter were held not liable for the whole damages caused by the deposits, or for the acts of their tenants, so far as these were done without their sanction. So, where plaintiff's boarders left his boarding house in consequence of the corrupt and offensive condition of the adjoining stream, caused by the sewerage discharged into it from a large number of hotels and other boarding houses before it reached plaintiff's premises, it was held that each contributor causing the torts was liable only to the extent of the wrong committed by him."

It is said in the text of 14 Ency. of Pl. and Pr., p. 1108, "Where a nuisance results from the act of several persons acting severally, they cannot be joined as defendants in actions for damages;" and in volume 15, p. 562, of the same work, it is said further that "persons who act severally and independently, each causing a separate and distinct injury cannot be sued jointly, even though the injuries may have been precisely similar in character, and inflicted at the same time. A joint tort is essential to the maintenance of a joint action. If separate and distinct wrongs, in no wise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions, and not jointly in the same action."

All these authorities cite in support of the rule as

stated by them numerous cases, many of which we have examined, and found to fully sustain the text.

The leading case upon the subject is *Chipman* v. *Palmer*, 77 N. Y., 52, 33 Am. Rep., 566, which is so closely in point that we quote from it at length:

"The first proposition contained in the charge was clearly correct. The right of the plaintiff to recover of the defendant all the damages which he had sustained by reason of the nuisance, I think, cannot be maintained. The injury was not caused by the act of the defendant alone, or by that of others who were acting jointly or in concert with the defendant. It was occasioned by the discharge of sewerage from the premises of the defendant and other owners of lots into the creek separately and independently of each other. The right of action arises from the discharge into the stream, and the nuisance is only a consequence of the act. The liability commences with the act of the defendant upon his own premises, and this act was separate and independent of, and without any regard to, the act of others. The defendant's act being several when it was committed, cannot be made joint because of the consequences which followed in connection with others who had done the same or a similar act. It is true that it is difficult to separate the injury, but that furnishes no reason why one tortfeasor should be liable for the acts of others who have no association and do not act in concert with him. If the law was otherwise, the one who did the least might be made liable for the damages of others far exceeding the

amount for which he really was chargeable, without any means to enforce contribution, or to adjust the amount among the different parties. So, also, proof of an act committed by one person would entitle the plaintiff to recover for all the damages sustained by the acts of others who severally and independently may have contributed to the injury. Such a rule cannot be upheld upon any sound principle of law. The fact that it is difficult to separate the injury done by each one from the other furnishes no reason for holding that one tortfeasor should be liable for the acts of others with whom he is not acting in concert."

Another leading case is that of *Little Schuylkill, etc., Co.* v. *Richards,* 57 Pa., 142, 98 Am. Dec., 209—an action brought against one of the parties contributing to a nuisance in filling up a milldam, resulting from throwing coal dirt into the river above it, by a number of parties acting independently of each other, to hold one of them liable for the entire injury, which the trial judge held could be done.

In reversing the judgment against the defendant, the court said:

"The doctrine of the learned judge is somewhat novel, though the case itself is new, but, if correct, is well calculated to alarm all riparian owners, who may find themselves, by a slight negligence, overwhelmed by others in gigantic ruin.

"It is immaterial what may be the nature of their several acts, or how small their share in the ultimate injury.

If, instead of coal dirt, others were felling trees and suffering their tops and branches to float down the stream, finally finding a lodgment in the dam with the coal dirt, he who threw in the coal dirt and he who felled the trees would each be responsible for the acts of the other. In the same manner separate trespassers who should haul their rubbish upon a city lot, and throw it upon the same pile, would each be liable for the whole, if the final result be the only criterion of liability. But the fallacy lies in the assumption that the deposit of the dirt by the stream in the basin is the foundation of liability. It is the immediate cause of the injury, but the ground of action is the negligent act above. The right of action arises. upon the act of throwing the dirt into the stream. This is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant's act upon his own land, and this act was wholly separate and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences did not increase his injury. If the dirt were deposited mountain high by the stream, his dirt filled only its own space, and it was made neither more nor less by accretions. True, it may be difficult to determine how much dirt came from each colliery, but the relative proportions thrown in by each may form some guide; and a jury, in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand. But the difficulty of separating the injury

of each from the others would be no reason that one man should be held liable for the torts of others without concert. It would be simply to say, because the plaintiff fails to prove the injury one man does him, he may therefore recover from that one all the injury that others do."

In the case of *Lull* v. *Fox & Wis. Imp. Co.*, 19 Wis., 100, the plaintiff sought to recover damages sustained by the overflow of his lands, caused by the erection and maintenance of dams in the two channels of the Fox river by the defendants, acting independently of each other, in a joint action against them.

The court, in sustaining a demurrer to the declaration for misjoinder, said:

"There is no allegation that all the defendants acted together in erecting or maintaining either or both of these dams. On the contrary, it is alleged they acted separately. Each dam was erected and has been maintained by a part of the defendants without the aid or approval of the others. We are at a loss to perceive how, by the well-established rules of pleading, these causes of action can be united. It is argued that the results of the separate acts of the defendants in erecting and maintaining the dams is a joint result, the same as if all the defendants had been engaged in erecting and maintaining both dams. If it were so, it does not follow that the defendant or defendants who alone erected and maintained one dam, without any concert of action or connection with the defendant or defendants erecting

111 Tenn—29

and maintaining the other dam, should be held liable to pay the damages occasioned by erecting and maintaining both."

In the case of *Miller* v. *Highland Ditch Co.*, 87 Cal., 430, 25 Pac., 550, 22 Am. St. Rep., 254, where a joint action was brought against the several owners of three ditches, which had been made by them, without any concert of action or unity of interest, for the purpose of discharging foreign waters from their respective lands into a canon, which, there united, passed out of the canon, and flowed over plaintiff's lands, depositing thereon sand and other debris, greatly injuring the same, for which damages were sought to be recovered, it was held it could not be done, the court saying: "It is clear that the rule as established by the general authorities is that an action at law for damages cannot be maintained against several defendants jointly, when each acted independently of the others, and there was no concert or unity of design between them. It is held that in such case the tort of each defendant was several when committed, and that it does not become joint because afterwards its consequences unite with consequences of several other torts committed by other persons. If it were otherwise, say the authorities, one defendant, however little he might have contributed to the injury, would be liable for all the damages caused by the wrongful acts of all the other defendants, and he would have no remedy against the latter, because no contribution could be enforced by the tortfeasors. . . ."

Swain v. Tennessee Copper Co.

The case of *Blaidsell* v. *Stephens,* 14 Nev., 17, 33 Am. Rep., 523, involved the same question, arising upon a similar state of facts. Several persons, owning and operating separate and distinct tracts of land, each in his own right, were jointly sued for discharging water from ditches on their respective premises into a ditch owned and maintained by plaintiff. It was held that there was no joint liability, the court saying: "The general principle is well settled that where two or more parties are acting each for himself in producing a result injurious to plaintiff, they cannot be held jointly liable for the acts of each other."

In the case of *Valparaiso* v. *Moffitt,* 12 Ind. App., 250, 39 N. E., 909, 54 Am. St. Rep., 524, it is said: "Concert of action and a common intent and purpose are generally necessary to make two or more persons joint tortfeasors and jointly liable. If several distinct acts of several persons have contributed to a single injury, but without concert of action or common intent, there is generally no joint liability."

In *Gallagher* v. *Kemmerer,* 144 Pa., 509, 22 Atl., 970, 27 Am. St. Rep., 674—an action to recover damages for injuries to plaintiff's land by a deposit of culm and dirt thereon caused by the defendant washing coal in a stream flowing through plaintiff's land—the error assigned was the refusal of the court to charge that a certain sum, which another coal company, operating upon the same stream, had paid plaintiff for the damages to his lands contributed by similar conduct, was a bar to

the recovery, upon the theory that all the parties contributing to the nuisance were joint tortfeasors, and the consequences of their several acts one tort, for which only one satisfaction could be had; and it was held no error, Clark, J., saying:

"It is argued on the part of appellant that the injury to which the plaintiff was subjected was of such a character that it could not, as between the parties who caused it, be divided, so as to determine in what proportion it was caused by each, and that, even if the defendant's mines had not been operated, the mining operations of the Highland Coal Company, conducted contemporaneously with the operations of the defendant's mines, would have resulted in the same injury. It is true that the injury complained of may have been caused in part by the operations of the Highland Coal Company, conducted contemporaneously with defendant's mines, and that it would be difficult, if not quite impossible, to separate and ascertain, definitely or certainly, the proportion of the whole damage done by each of these operations, respectively. But these several operations were entirely independent of each other. They were several miles apart, and the ownership, management, and control were wholly distinct and separate. There was no concert of action or common purpose or design which would support the theory of joint injury."

In *Sloggy* v. *Dilworth*, 38 Minn., 179, 36 N. W., 451, 8 Am. St. Rep., 656, the defendant and others dug ditches on their respective lands, draining the waters

therefrom upon the plaintiffs, and the court said: "Upon these facts, defendants, if liable at all in the action, would only be liable for the proper proportion of the damages caused by them. If waters are wrongfully turned upon the lands of another as the result of the acts of several parties, they are liable. If the damage caused is the combined result of several acting independently, recovery may be had severally in proportion to the contribution of each to the nuisance, and not otherwise."

In *People* v. *Oakland Water Co.*, 118 Cal., 234, 50 Pac., 305, it is held:

"Where, in a suit to abate a public nuisance, it appears that each of the several defendants acted independently of the other in the maintenance of a separate alleged nuisance, a demurrer will lie for misjoinder of the case and of parties defendant."

In *Martinowsky* v. *Hannibal*, 35 Mo. App., 70, it is said:

"When the act producing the injury is not joint, the party can be responsible only to the extent of injuries inflicted by his own wrong, and a joint action against the parties whose separate acts produced the wrong cannot be brought."

There are many other cases in accord with these, among which are: *Adams* v. *Hall*, 2 Vt., 9, 19 Am. Dec., 690; *Van Steenburgh* v. *Gray and Tobias*, 17 Wend., 562, 31 Am. Dec., 310; *Russell* v. *Tomlinson & Hawkins*, 2 Conn., 206; *Loughran* v. *City of Des Moines*, 72 Iowa,

382, 34 N. W., 172; *Sellick* v. *Hall,* 47 Conn., 260; *Evans* v. *Wilmington & W. R. Co.,* 96 N. C., 45, 1 S. E., 529.

It will be found, upon examination of the cases cited by counsel for plaintiffs as holding a contrary rule, that there was either community of interest, concert of action, or common purpose and design, or joint, concurrent negligence, in some form, which made the defendants joint tortfeasors, and that, when carefully considered, they are not really in conflict with the doctrine here announced.

This is true of our own cases of *Electric Co.* v. *Shelton,* 89 Tenn., 424, 14 S. W., 863, 24 Am. St. Rep., 614; *Snyder* v. *Witt,* 99 Tenn., 619, 42 S. W., 441; *Railroad* v. *Jones,* 100 Tenn., 511, 45 S. W., 681; *Beopple* v. *Railroad,* 104 Tenn., 420, 58 S. W., 231.

In the last case cited there was only one defendant, whose wrongful conduct consisted in the joint negligence of the crews of two different trains belonging to the same railroad company, or several agents of the same principal.

In the other cases the defendants were held liable on account of their joint concurrent negligence contributing directly to produce the injuries complained of, and there could be no serious controversy but that they were jointly and severally liable for the entire damage done, and the questions now under consideration were neither involved nor discussed in any of them.

Nor do we see any great difficulty in ascertaining the proportion which the defendant in cases of this charac-

ter contributed to the damages done the injured party. Take the cases under consideration as an illustration. Proof of the extent and capacity of the several plants causing the damages complained of, the tonnage of ores treated by each of them, the time each has been in operation, their comparative proximity or distance from the plaintiff's lands, the usual condition of the air currents in that locality, and many other facts and circumstances, will show with substantial certainty the extent of the injury inflicted by each of the defendants; and in this way justice may be done the injured party. It is said in one case that, in the absence of all proof, it may be presumed that the several tortfeasors contributed equally to the damages inflicted, the effect of which would be to throw upon the defendant tortfeasor the burden of showing that others contributed to the injury, and the extent of such contribution. And in the case of *Little Schuylkill River, etc., Co.* v. *Richards,* supra, it is said that juries will measure the damages done by each with a liberal hand, which is doubtless true; and experience will probably show that plaintiffs will not suffer in prosecuting two actions.

While we are not now called upon to pass upon this question, we think that, where defendants are guilty of wrongs necessitating the action, juries should not be held to great nicety and accuracy of judgment in ascertaining the damages to be assessed against each of the tortfeasors; and this court would be slow to interfere with verdicts supposed to be excessive.

The declarations in these cases present two distinct causes of action against two distinct defendants, caused by conduct while acting without concert of action, or the presence of a common interest or purpose, sought to be redressed in one action, and are clearly subject to the objection urged against them.

The defendants are only liable for the proportion of the damages contributed and done by them, respectively, and cannot be sued in one action for the aggregate injuries sustained by the respective plaintiffs.

The judgment of the trial judge sustaining the demurrers and dismissing the suits is affirmed, with costs.