## In re Domestic Animals Killed by Dogs.

SHULL, Dep. Att'y-Gen., July 1, 1929.—You request that you be advised upon the matter of a claim of $281.50 for damages paid by the Commonwealth for sheep killed by dogs in Mercer County.

The record discloses that the owners of the dogs killing the sheep are non-residents of Mercer County, and your chief inquiry is whether the whole sum may be collected from one of the owners who is responsible, and whose dog was unlicensed, the other, whose dog was licensed, is not the owner of property, and, further, you wish to be advised whether only one-half the sum sought to be collected shall be from each party.

The authority of the Commonwealth to collect from owners of dogs killing sheep arises by legislative enactment. We, therefore, begin with Act of May 11, 1921, P. L. 522, relating to loss or damage to livestock destroyed by dogs. Said act provides, *inter alia*, that a justice of the peace and an auditor of the municipality shall appraise the damage sustained and if possible ascertain the owner or owners of dogs by which the damage was done; that, upon approval of such report by the Secretary of Agriculture, he shall draw his check for the amount of loss from the Dog Fund. And, further, it is provided that:

"Section 26. . . . Any owner or keeper of such dog or dogs shall be liable to the owner of such livestock or poultry, in a civil action, for all damages and costs, or to the Commonwealth to the extent of the amount of damages and costs paid by the Commonwealth, as hereinafter provided. . .

"Section 29. . . . Upon payment by the State of damages of livestock or poultry by dogs, the rights of the owner of such livestock or poultry against

the owner of a dog, to the extent of the amount of damages so paid by the State, shall inure to the benefit of the State. . . ."

Preliminarily, we may state that the matter of the one person having a licensed and the other an unlicensed dog is not a material factor under the presentation and determination of the specific information you are seeking. The solution of the problem comes from a different angle. Both dog owners here are in the wrong and both violators of the statute in permitting their dogs to be at large in the night-time. It was this negligence and failure to observe the provisions of the statute which occasioned the damage to the sheep. Doubtless, no witness would be able to tell which sheep was killed by the one dog or the other; neither is such testimony required to render either or both liable. If I have a proper conception of the facts, the two dogs were together discovered killing and injuring a certain number of sheep belonging to the owner, who subsequently received the money for his loss or damage from the Commonwealth as provided by the statute. This money is now sought to be recovered, not under the statute cited at section 26, where the owner of the sheep had a civil action for all damages and costs against the owner of the dogs, but, the Commonwealth having paid the claim, under section 29 the right of the owner of the sheep against the owner of the dog or dogs inures to the benefit of the State to the extent of damages so paid by the State.

The statute having thus fixed the status of the Commonwealth, we turn to the ascertainment of the position or relation of liability of the defendants and whether they may be sued jointly or severally where the dogs are not owned by the same parties. This seems to be the crux in the inquiry which you have submitted.

Where there are two joint trespassers, both or either may be sued, and if process is had against one, such one cannot be relieved from liability by showing that the other participated in the illegal act: Burk v. Howley et al., 179 Pa. 539. If these defendants were joint tortfeasors, the action would be joint, but in order to be made liable jointly, it must appear that they were acting in concert, with a common intent; their act of negligence and illegal trespass must be concurrent to render them liable: Klauder v. McGrath, 35 Pa. 128. In other words, joint tortfeasorship may only be affirmed when there is shown to be a community of interest in the purpose of the undertaking with authority to control and direct the conduct of each other in the project engaged upon: Brobston v. Darby Borough, 290 Pa. 331; Betcher v. McChesney, 255 Pa. 394.

From these authorities it must be concluded that these defendants cannot be sued together or jointly in the same action because there could not likely be established a concert of purpose or community of interest between the owners of the dogs to have the dogs join in the destruction of the sheep. It then becomes necessary to institute actions in severalty, and if their purpose is not joint but several, to determine in what manner the extent of liability of each may be established.

At common law the owner of a dog was not liable for its bite until *scienter* was established. By this is meant that the vicious propensities of the dog must have been known to the owner prior to the time when the wrong was committed. We need not, however, draw lines of distinction between actions on the case or in tort and that of trespass, but that between actions that are joint or against the defendants severally. The defendants in the instant case, the owners of the dogs which killed the sheep, were not joint owners, but each was the owner of one of the dogs doing the damage, as in the case of Adams v.

Hall and Cootwire, 2 Vt. 9, wherein it was said by Hutchinson, J.: ". . . Hall was under no obligation to keep the other defendant's dog from killing sheep; nor. *vice versa*. Then, shall each become liable for the injury done by the other's dog merely because the dogs, without the knowledge or consent of the owners, did the mischief in company? We think not. . . ."

And in Van Steenburgh and Gray *v.* Tobias, 17 Wendell's Reps. 562, it was held: ". . . Owners are responsible for the mischief done by their dogs; but no man can be liable for the mischief done by the dog of another unless he had some agency in causing the dog to do it. When the dogs of several persons do mischief together, each owner is only liable for the mischief done by his own dog. . . ."

The syllabus to this case is: "A joint action does not lie against several owners of dogs by whom the sheep of a third person have been worried or killed." This case is apt in its discussion where one dog may be young, small and feeble and incapable of mischief by himself, and yet if a joint action lie, his master may be accountable for the injury caused by the large ferocious dog. The illustration used is "An ox and a calf belonging to different owners, reaching through the fence, throw it down and enter the enclosure of another at the same time; it would be unjust that the owner of the small animal should be holden to pay the damage done by the larger. . . . The jury in this case, as in most cases of wrong, get at the real damages in the best way they can:" Russell *v.* Tomlinson, 2 Conn. 206. Buddington *v.* Shearer et al., 20 Pickering (Mass.), 477, is of like effect: ". . . Where the injury was done by two dogs, together, belonging to several owners, it was held that each owner was liable only for the damage done by his own dog and not for the whole damage done by the two dogs."

This case is significant, in that it discloses or points out a method by which the damages may be arrived at by the jury where the dogs of several owners did the injury, and the court reasons as follows: "There may be some difficulty in ascertaining the *quantum* of the damage done by the dog of each, but the difficulty cannot be great. If it could be proved what damage was done by the one dog and what by the other, there would be no difficulty; and on failure of such proof, each owner might be liable for an equal share of the damage if it should appear that the dogs were of equal power to do mischief and there were no circumstances to render it probable that greater damage was done by one dog than by the other. But whatever the difficulty may be, it can be no reason why one man should be liable for the mischief done by the dog of another." The reasoning of the last case cited is followed in Partenheimer *v.* Van Order, 20 Barbour, 479 (Supreme Court of New York State), "Syl.:"

"Where cows belonging to several owners are found in the garden of an individual, committing a trespass, each owner is liable for the damage done by his own cow and no more.

"And in the absence of any proof as to the amount of damage by each cow, the law will infer that the cattle did equal damage."

The method of arriving at the measure of damages to which each owner of the dogs would be liable in the foregoing cases cited from other states was approved by Agnew, J., in Little Schuylkill Navigation R. R. & C. Co. *v.* Richards's Admin'r, 57 Pa. 142, wherein the culm or dirt from various coal-mining operations was washed into a dam, thereby destroying its usefulness as a water power.

You are, therefore, advised that actions may be instituted against both of these parties, severally, for the recovery from each of the amount of damages

498

which it may be shown by the evidence his dog had done in the destruction of the sheep, or suit may be instituted against one of the owners, and if the jury find against such one the full sum paid by the State, no suit could be prosecuted against the other; but if the suit against the one produces only a part of the sum paid by the State, then suit may be brought against the other for the balance.                                          From C. P. Addams, Harrisburg, Pa.